# Richmond.

## THE MOORE LIME CO. V. RICHARDSON'S ADM'R.

### NOVEMBER, 18, 1897.

1. MASTER AND SERVANT—*Fellow-Servants—Foreman of Gang.*—The foreman of a gang of hands engaged in moving cars on a siding, who is a member of the gang, doing the same work and receiving the same pay as other members of the gang, is a fellow-servant of such other members, although he exercises authority over them, and directs them while engaged in their common work, and it is their duty to obey him. This kind of superiority does not make him a vice principal.

2. MASTER AND SERVANT—*Fellow-Servants—Foreman—Negligence—Failure to Give Warning.*—The failure of the foreman and fellow-servant of a gang of hands engaged in moving cars on a siding to give warning of the approach from behind of a car by which a member of the gang is injured, is not negligence for which the master is liable, although it had been customary for the foreman to give such warning under like circumstances.

3. MASTER AND SERVANT—*Servant's Knowledge of Danger—Special Warning.*—A servant who has been engaged for a number of years in the work of the master, and who has full knowledge of its danger, is not entitled, while engaged in his usual employment, to special warning of dangers reasonably to be apprehended.

4. MASTER AND SERVANT—*What Risks Servant Assumes.*—A servant engaged in the service of a master does not assume *all the risks* incident to his employment, but only such as are *ordinarily* incident thereto.

5. MASTER AND SERVANT—*Promulgation of Rules—Complex Business—Case at Bar.*—It is the duty of a master who is engaged in a complex business which requires definite rules for the protection and safety of his servants, to adopt rules for that purpose, and a failure to do so is such negligence as renders him responsible for all injuries resulting therefrom. In the case at bar the work was neither complex, nor difficult. The occasional moving of cars by hand on a railroad siding is not a work of such nature as to require the promulgation of rules for the government of servants engaged in such moving.

Argued at Staunton. Decided at Richmond.

Error to a judgment of the Circuit Court of Botetourt county rendered October 30, 1896, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The evidence sufficiently appears in the opinion of the court. After all the evidence had been introduced, the plaintiff asked for seven instructions to which the defendant objected, but the court, after making some amendments, overruled said objection, and gave said instructions, and the defendant excepted. Thereupon the defendant asked for eight instructions, to which the plaintiff objected, but the court after making some amendment of defendant's instruction No. 1, overruled the objection as to defendant's instructions No. 1 and No. 2, and sustained it as to all of the other instructions offered by the defendant, and the defendant again excepted. As some objection was made to the form of the bills of exceptions, bills No. 1 and No. 2 are given in full.

*Bill of Exception No. 1.*

Be it remembered that on the trial of this cause, after the jury were sworn, the plaintiff, to maintain the issue on its part, introduced the following testimony, to-wit:  (For testimony of plaintiff see immediately following this bill of exceptions.) And thereupon the defendant to maintain the issue on its part introduced the following testimony, to-wit:  (For testimony of defendant see immediately following this bill of exceptions as well as for testimony in rebuttal on both sides.)  And the said testimony constitutes the whole of the evidence that was introduced by the parties to the cause.

Thereupon the plaintiff by her counsel moved the court to give seven instructions to the jury, to the giving of which and

each of which, the defendant by its counsel excepted, and the court, after making some amendments, gave the said seven instructions in the form following, to-wit:   (For these instructions see immediately following testimony in this cause which follows directly after this bill of exceptions.)   And thereupon the defendant, by its counsel, excepted to the opinion and ruling of the court in giving the said seven instructions and in giving each one of said instructions, and prays that this, its first bill of exceptions may be signed, sealed, enrolled and made a part of this record, which is accordingly done.

*Bill of Exception No. 2.*

Be it remembered, that on the trial of this cause, after all of the evidence had been given to the jury and completed, which evidence is as set out in the defendant's first bill of exceptions, which first bill of exceptions is made a part of this bill of exceptions, the defendant, by its counsel, moved the court to give to the jury eight instructions, which eight instructions are in the words and figures following, to-wit:

\*        \*        \*        \*        \*        \*        \*        \*        \*

And the plaintiff, by her counsel, objected to the giving of each one of said instructions, and the court amended the said first instruction by inserting between the words *"between said cars"* and the words *"and that said Richardson"* the following words, to-wit: *"and that it was not the habit of the hands in moving the cars to go between them,"* and gave said first instructions as amended, and the court also gave the said second instruction and the said third instruction as asked, and the court rejected each one of the other instructions asked by the defendant, being the instructions number 4, number 5, number 6, number 7 and number 8  (eight) asked for by the defendant, and thereupon the defendant, by its counsel, excepts to the opinion and ruling of the court in amending the said first instruction, and in refusing to give each one of said other

instructions, number 4, number 5, number 6, number 7 and number 8 and prays that this, its second bill of exceptions may be signed, sealed, enrolled and made a part of the record, which is accordingy done."

The following instructions are commented on in the opinion of the court, and are therefore given in full:

*Plaintiff's Instructions Nos. 3, 5 and 6.*

### 3.

The court instructs the jury that if they believe from the evidence that Robert Rudisill was the regular foreman in charge of the force of hands of which the plaintiff's decedent was one, and in his absence David Whitmer had charge of said hands with full authority to direct the other hands on said force, and at the time of the accident Robert Rudisill was absent, and had sent a message to David Whitmer to call out the hands and move the cars down, and the hands were acting under said orders in the presence of Whitmer, and it was known to the company that it was the habit of Whitmer to act in the place of Rudisill, when so directed by Rudisill, then the said Whitmer was the representative of the defendant company, and, if the accident was caused by his negligence or default, the company is liable, and this liability exists though the said Whitmer was a common laborer receiving the same pay as to the other hands.

### 5.

The court instructs the jury that if they believe from the evidence that the hands moving down the car on the day of the accident were accustomed to receive warning from Rudisill or Whitmer of the approach of a car from behind, and at the time of the accident no warning was given to plaintiff's decedent, and he was struck by a car from behind, while in the

discharge of his duty, the failure to give such warning was negligence for which the defendant company is liable in this action.

6.

The court instructs the jury that if they believe from the evidence that at the time of the accident the duties of the plaintiff's decedent required his attention to be directed in front of him, and he was properly discharging that duty and did not know and had no reason to suppose the car which struck him from behind was approaching, and received no warning of its approach, then his failure to look back was not negligence on his part sufficient to defeat the plaintiff's recovery in this action.

*Defendant's Instructions 4 and 8.*

4.

The court instructs the jury that the deceased, Lewis Richardson, assumed all the risks incident to his employment when he entered the service of the defendant—among them the injuries caused by the carelessness of fellow-servants; and if they believe from the evidence that the death of the said Richardson was caused by the negligence of the employees who were pushing the car which struck him, and inflicted the injury, such negligence cannot be imputed to the defendant, and they must find for the defendant.

8.

If the jury believe from the evidence that, at the time of the accident, David Whitmer and Lewis Richardson were employed by the defendant at the same wages and in the same general service, and that it was a part of the duty of said Whitmer to weigh limestone, and to inform the said Lewis and his other co-laborers when cars were needed at the platform for loading, and to aid said laborers in pushing empty cars to their loading

places, they are further instructed that the authority given to said Whitmer to weigh limestone and to indicate the time and place of pushing cars did not make him anything more than a fellow servant with said Lewis Richardson, and did not render the defendant liable for any injury resulting from the failure of said Whitmer, properly to direct and superintend the moving of the cars or the failure of any of the other co-laborers of said Lewis Richardson properly to move the cars that caused the death of said Lewis Richardson.

*R. L. Parrish* and *Cabell & Cabell,* for the plaintiff in error.

*F. G. Woodson* and *C. M. Lunsford,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Whilst working as a day laborer for the defendant company (plaintiff in error here), the plaintiff's intestate received injuries which caused his death. This action was brought to recover damages therefor, and upon the trial a judgment was rendered against the defendant company.

The first assignment of error is to the action of the court in giving certain instructions for the plaintiff, and the second in refusing to give certain instructions asked for by the defendant, and for modifying another. These assignments of error will be considered together.

The objection made by the plaintiff that the bills of exception upon which these assignments of error are based are insufficient is not well taken. The bills of exception show that the defendant objected to each and all of the instructions given for the plaintiff, and also to the action of the court in refusing to give the rejected instructions, and in modifying another instead of giving it as offered. They are in the usual form where the action of the court upon instructions is excepted to, and are sufficient.

The objections made to the plaintiff's instructions, numbered one, two, and seven, were abandoned in oral argument.

The plaintiff's instruction, numbered three, ought not to have been given. Although the jury may have believed all the facts upon which it was based, Whitmer, who was acting as the foreman or leader of the gang of hands of which the plaintiff's intestate was a member when injured, was not the representative of the defendant company, but was a fellow-servant with the deceased.

And for the same reason that the plaintiff's instruction No. 3 should not have been given, the eighth instruction offered by the defendant, and rejected by the court, should have been given.

The evidence tends to prove that the defendant company was engaged in the business of quarrying limestone, burning lime, and in shipping both lime and limestone, at and near Eagle Rock, a station on the Chesapeake & Ohio Railway. It had a superintendent at that place who had the general control and management of its business. Rudisill, mentioned in the instruction as foreman, was employed by the company to "trim" or "head up" the barrels in which the lime was shipped, to keep the time of the gang of hands of which the plaintiff's intestate was a member, put them at work each day, and to see that they did the work they were employed to do, which was to wheel wood to the lime kilns, to move cars on the switch to the points where they were to be loaded, and to load them. He also had the power to employ hands to work in that gang, and to discharge them. Whitmer, one of the gang, receiving the same pay and doing the same work as its other members, usually directed them when and where the cars were to be moved, and in doing this work it was the duty of the other members of the gang to obey him. On the day of the accident Rudisill was absent, and Whitmer directed the gang to move two cars standing on the switch to the platform where they were to be loaded, a distance of not less than fifty, nor more than one hundred and

fifty, feet, it would seem.   After the gang had started one car
down the switch, toward the platform, Whitmer, leaving the
plaintiff's intestate pushing that car, directed other members
of the gang to go back for the other car, which they did, Whit-
mer going with them, and, after starting that car,. they removed
their hands from it and allowed it to move slowly down the
switch, which was slightly down grade in the direction of the
platform.   About the time the car the decedent was pushing
reached its destination it was overtaken by the rear car, the
bumper of which struck the plaintiff's intestate, driving him
against a link in the bumper of the car he was pushing, and
inflicting the injuries of which he died.   The deceased knew
that Whitmer and other members of the gang had gone back
for the rear car, but Whitmer did not warn him of its approach,
as was frequently, if not usually, done under like circumstances.
The deceased had been in the service of the defendant for five
or six years, and had been warned not to walk behind the cars
when moving them, though it was a common practice to do so.
The bumper on each car was about twelve inches long, and ten
inches wide.   The evidence also tended to show that if the
deceased had been pushing the car on either side of the bum-
per he would not have been injured, as the end of the cars were
separated from each other nearly two feet when the bumpers
came together.

The ground upon which it is claimed that Whitmer, who was
a member of the same gang, doing the same work and receiv-
ing the same pay as the plaintiff's intestate, was not a fellow-
servant is because he was exercising authority over the gang,
or acting as leader or foreman in the work of moving the cars.
That this sort of superiority did not make him a vice principal
is clear under the decisions of this court.   In the case of
*Richmond Locomotive Works* v. *Ford*, 94 Va. 627, the question
was whether the boss or foreman of a gang of hands (of which
he was a member), engaged in moving locomotive wheels about
the yards of the Locomotive Works, which was under the manage-

ment of a superintendent, was a fellow-servant, or vice-principal. In that case it was held that such a boss or foreman was a fellow-servant, and that his negligence was one of the risks which the members of the gang assumed when they entered into the service. ـt was said in that case that where the execution of work directed to be done by the master or his representative is entrusted to a gang of hands, it is necessary that one of them should be selected as leader, boss, or foreman, to see to the execution of the work. This kind of superiority of service is so essential and so universal that every workman in entering upon a contract of service must contemplate its being made in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow workman. The foreman, or superior servant, stands to him in that respect in the precise position of his other fellow-servants. The manner of performing each of the various duties by which the wheels were to be gotten out and taken where they were needed rested necessarily upon the intelligence, care, and fidelity of the servants to whom that duty was entrusted. If, in the performance of it, the plaintiff was injured by reason of the negligent act of a fellow-servant, although that fellow-servant was the foreman or leader of his gang, it was one of the risks which he assumed.

Instructions numbered five and six given for the plaintiff were also erroneous. The case of the *Richmond Granite Co.* v. *Baily,* 92 Va. 554, cited by counsel to show that instruction No. 5 was a correct statement of the law does not do so. It is true that a similar instruction was given in that case, but it was expressly stated in the opinion of the court that it was not a correct statement of the law, though, under the peculiar facts of the case, the giving of it was considered harmless error.

Neither does the case of *Michael* v. *Roanoke Machine Works,* 90 Va. 492, relied on to show that the court did not err in giving instruction No. 6, do so. That was a case where the

plaintiff had been temporarily ordered to leave his usual place of work, and to work in a place where there were dangers unknown to him, and of which no warning was given.  In the case at bar the plaintiff's intestate when injured was engaged in the work which he had been employed to do, and of whose dangers he had full knowledge, since he had been doing the same work for five or six years.  Instructions must apply to the facts of the particular case.  An instruction which may be entirely correct in one case may be wholly inapplicable to another.

Instruction numbered four offered by the defendant company was properly rejected.  An employee does not assume all the risks incident to his employment as is stated in the instruction, but only such as are ordinarily incident to the employment. *Bertha Zinc Co.* v. *Martin,* 93 Va. 791; 3 Elliott on Railroads, sec. 1288.

The action of the court in refusing other instructions of the defendant is assigned as error, but as the judgment complained of must be reversed for other errors it is not necessary to pass upon them as they are not likely to arise upon the next trial.

The next question to be considered is whether the defendant company, as the plaintiff insists, was guilty of negligence in not adopting and publishing safe and proper rules for the regulation of its business.

One of the positive duties of a master is to adopt rules for the protection and safety of his employees, where he is engaged in a complex business which requires definite rules for their protection, and a failure to do so is such negligence as renders him responsible for all injuries resulting therefrom.  Wood on Master and Servant, sec. 403; *Morgan* v. *Hudson River Ore & Iron Co.,* (N. Y.) 31 N. E. R. 234.

The evidence tends to show that the defendant had not adopted and published rules regulating the manner in which the cars were to be moved.  The cars were left on the railroad siding to be loaded, and had to be moved a short distance, as we

have seen, on a slight down grade to the point where they were to be loaded. They were not moved by steam, but by the strength of the gang of hands. The work was neither complex nor difficult. It is not shown that there was anything in the nature of the work which made it necessary for the defendant to enact rules. Its failure to do so was not proof of negligence, unless it appeared from the nature of the work in which the servants were engaged (and it does not) that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity for such rules. *Morgan* v. *Hudson River Ore & Iron Co.* (N. Y.), 31 N. E. R. at p. 236.

The third assignment of error is to the action of the court in refusing to permit the defendant company to introduce certain evidence, because it was evidence which ought to have been offered in chief.

As the judgment has to be reversed upon other grounds and a new trial ordered, it is unnecessary to pass upon this question, as it is not likely to arise upon the next trial.

For the foregoing reasons the judgment complained of must be reversed, the verdict set aside, and a new trial awarded to be had in accordance with the views expressed in this opinion.

*Reversed.*