## Richmond.

### NORFOLK AND WESTERN RAILWAY COMPANY v. GRAHAM.

#### NOVEMBER 17, 1898.

#### Absent, Riely and Cardwell, JJ.

1. MASTER AND SERVANT—*Injury to Servant—Obvious Dangers—Fellow-Servants.*—A master is not liable for an injury inflicted on an experienced servant in the possession of all of his faculties where it appears that the immediate cause of the injury was his exposure of himself to an open and obvious danger, and the failure of a fellow-servant to give him timely warning, and that his fellow-servants were entirely competent to discharge the duties assigned to them.

2. RAILROADS—*Rules.*—It is the duty of a railroad company to prescribe proper rules for the conduct of its affairs, but it is impossible to formulate rules to govern its employees in the performance of every simple service they may be called on to discharge. Something must be left to the care and discretion of the employees themselves.

Error to a judgment of the Hustings Court of the city of Roanoke rendered December 31, 1897, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson*, for the plaintiff in error.

*Moomaw & Woods, S. G. Williams* and *J. A. Bowles*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Graham brought suit in the Hustings Court of the city of Roanoke to recover damages from the Norfolk and Western Railway Company for injuries received by him while in its service. After the evidence had been introduced, the defendant company demurred. The jury rendered a verdict in favor of the plaintiff for $4,300, upon which the Hustings Court entered judgment, and the case is before us upon a writ of error to that judgment.

We shall only consider the third assignment of error, which involves an inquiry into the sufficiency of the evidence to sustain the verdict and the judgment.

Graham, at the time of the injury, was in the employment of the defendant as helper to the overhauler in the yards of the company at Roanoke. Upon the occasion of the injury of which he complains, Wilson, the foreman of the yard, directed Lowry, who is known as an "ostler," to go with the engine and move a car to a place upon one of the tracks within the yard at which a number of car-wheels which needed repairing had been deposited. There were detailed to aid him in this task Graham, the plaintiff, Gilmore, Robinson, and Viar. They were directed to take with them a "skid," which is a frame-work made of strong and heavy timbers, one end of which rests upon the car which is to be loaded and the other upon the ground, thus forming an inclined plane up and along which heavy articles are drawn. The engine was attached to the car with its front or head-light toward it, and in this manner it was moved to the place where the wheels were to be loaded. The "skid" having been placed in position, chains were attached to the wheels at one end, and to the engine at the other. The method of loading was to back the engine, which had, of course, first been detached from the car, and thus draw the wheels up the inclined plane formed by the "skid" to the floor of the car. It was discovered that a brake-rod which projected above the end of the car next to the wheels which were to be moved was in the way of the

workmen, and Wilson, the foreman, directed it to be lowered, which was done by Graham and some of the other employees. The wheels were loaded without accident, and the men were then directed by Wilson to take the "skid" back to the place from which it had been gotten, and then move the car laden with the wheels to a designated point, and further directed them not to leave the car until the brake-rod had been replaced. Wilson then went to another part of the yard, and Lowry with the engine, accompanied by Robinson, Gilmore, and Graham, proceeded to execute the orders which they had received. Viar took the chains which had been used in loading the car, and carried them back to the place where they belonged. When Lowry reached the point upon the track where the "skid" was to be unloaded he stopped, the "skid" was taken off, and Graham, who understood Wilson's orders to be that he should replace the brake as soon as the car stopped, went under the car at the end remote from the engine, got down upon the track, and, with the assistance of Robinson, who stood upon the car and held the brake-rod in an upright position, proceeded to fasten it in its proper place. Lowry knew nothing of Graham's dangerous position, nor did Gilmore, who had also gotten upon the engine. Robinson, who knew that Graham was upon the track, states that he gave no warning to the engineer, because he took it for granted that Graham had gone under the car with the knowledge that it was not to be moved. According to the testimony of Gilmore and Lowry, Gilmore rang the bell, giving it as many as five strokes, whereupon Lowry put the engine in motion. Robinson, knowing Graham's danger, called to Lowry to stop, which he did as promptly as possible, but not in time to avoid inflicting serious and most painful injuries upon Graham.

The employees of the company seem to have been skillful men, and competent to the proper discharge of the duties imposed upon them. Indeed, those duties, so far as this record

is concerned with them, were of the simplest nature, and the only part of them which involved any difficulty, the placing of heavy wheels upon the car, had been successfully performed. Graham was a man twenty-one years of age, of ordinary intelligence, and had been in the employment of the company for more than a year. There was nothing occult or difficult in the duty which he was called upon to perform. The danger attending it was open and obvious, and within the range of the most ordinary capacity. He knew that Wilson, the foreman, who gave the instruction as to what they were to do, had gone to another part of the yard. Viar had gone off with the chains. Robinson was upon the car aiding him in adjusting the brake. Lowry and Gilmore were upon the engine. All the directions given by Wilson were given in Graham's presence. He understood those directions to require him to replace the brake as soon as the car was stopped for the purpose of unloading the "skid." Lowry, who was in charge of the engine, understood that the brake was to be replaced when the car had been taken to its point of destination. Both Lowry and Gilmore testified that the bell was rung before the engine was moved. Graham says, no doubt truly, that he did not hear it, and Robinson, that if it was rung he failed to observe it, as there was a confusion of noises, and the ringing of many bells around him.

We have said that Graham knew these things, because a man is presumed to know what takes place in his presence and before his eyes, and in the light of day. He was in a position to see all and to hear all that occurred, and when he went under the car he must have known that he was going into a place of danger, and that no one had been charged with any particular duty to look out and warn him of approaching danger.

To go under a car, under such circumstances, to which an engine was attached, without notifying the engineman of his purpose, was an act of negligence. The facts in proof estab-

lish that the peril he incurred in going under the car was such that a man of ordinary intelligence must have seen and understood. This indiscretion on his part was the immediate cause of the injury which he sustained. The evidence fails to disclose negligence upon the part of the defendant company. As we have said, the men employed with Graham seem to have been entirely competent to discharge the duties assigned them. Those duties were simple, and the danger attending the discharge of them was so obvious, and so easily guarded against, by the most ordinary care and precaution upon the part of those engaged in them, as not to require rules and regulations for the government of employees while so occupied. It is one of the duties of a railroad company to prescribe proper rules for the conduct of its affairs, but it is impossible to formulate rules with respect to every simple service its employees may be called upon to discharge.

As was said by Judge Buchanan, in *Moore Lime Co.* v. *Richardson*, 95 Va. 336: " The work was neither complex nor difficult. It is not shown that there was anything in the nature of the work which made it necessary for the defendant to enact rules. Its failure to do so was not proof of negligence, unless it appeared from the nature of the work in which the servants were engaged (and it does not) that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity for such rules."

Something is necessarily left to the care and discretion of the employees themselves.

Upon the whole case we are of opinion that the judgment upon the demurrer should have been for the defendant.

*Reversed.*