# Wytheville.

## Virginia Iron, Coal & Coke Co. v. Lore.

### June 22, 1905.

1. Master and Servant.—*Safe Place—Warning—Change of Rules During Servant's Absence.*—If a former servant returns to the employment of the master, and during his absence rules which formerly existed for the protection of servants have been abrogated, it is the duty of the master to publish new rules, or else to warn the servant of the dangers to which he will be subjected.

2. Master & Servant—*Complex Business—Publication of Rules—Warnings.*— Where two companies are engaged in operating steam engines and cars upon the same tracks in the same yard, running backwards and forwards, at all hours of the day and night, the business is of such complex nature that they should promulgate rules for the protection of their employees in the discharge of their duties, and the failure to do so is such negligence as to render them responsible for the injuries resulting therefrom.

3. Negligence—*Case at Bar—Leaving Switch Open—Demurrer to Evidence.*— Whether or not leaving a switch open in the yard of a furnace company by those in charge of the yard engine until the return of the engine from its trip, in accordance with a custom of doing business, was, in the absence of any rule on the subject, negligence on the part of those in charge of the engine, was, under all the facts and circumstances of the case, a question for the jury, and as they might have found that it was not, it was the duty of the trial court, on a demurrer to the evidence, to so find.

Error to a judgment of the Corporation Court of the city of Bristol in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*P. H. C. Cabell* and *R. E. Cabell,* for the plaintiff in error.

*A. H. Blanchard, H. W. Sutherland* and *R. E. Burson,* for the defendant.

Buchanan, J., delivered the opinion of the court.

H. C. Massie, whilst in the service of the Virginia Iron, Coal and Coke Company, lost his life, and this action was brought by his personal representative to recover damages therefor, upon the ground that his decedent's death was caused by the negligence of that company.

Upon the trial of the cause the defendant company demurred to the evidence, which demurrer was overruled by the court and a judgment rendered in favor of the plaintiff for $3,000. To that judgment this writ of error was awarded.

It appears that the defendant company was the owner of a large furnace for the manufacture of iron, located in the city of Bristol. Attached to the furnace was a large yard, in which are tracks and switches belonging to and used by the company in hauling material and refuse from one part of the yard to another. By some arrangement with the furnace company, the nature of which is not shown by the record, the Virginia and Southwestern Railway Company, with its own locomotives, cars, and employees, delivered materials and supplies upon the defendant company's yard for use at its furnace. The map or diagram on opposite page shows generally the location of the furnace, its yard, tracks and switches, the point where the railway company entered the yard, and the point where the plaintiff's decedent lost his life.

On the evening before the accident, which occurred just before day the next morning, the defendant company employed the plaintiff's decedent to aid in hauling slag from the furnace to the dumping ground in its yard. The machinery used for that purpose was a slag pot, or ladle, on wheels, and a small

steam engine called a "dinkey." The engineman and his helper, the plaintiff's intestate, known as the "potman," had been operating this machine the night preceding the accident, and were returning from the tipple track toward the main furnace track, slag pot in front, when they were, without warning, run into by the cars of the Virginia and Southwestern Railway Company, which were being pushed into the yard, and the plaintiff's intestate killed.

The grounds of negligence upon which the plaintiff bases his right to recover are, that the defendant company failed to warn his decedent of the dangers attending his employment, and had no rules defining the manner in which its work was to be done for the purpose of protecting its employees.

It appears that no warning or instruction was given the decedent, and that the defendant had promulgated no rules. The contention of the defendant company is that the decedent needed no warning, because when employed he represented that he had worked before in this same capacity, and that, although the defendant company had promulgated no rules, the rules of the railway company governing its employees in running its locomotives and cars upon the furnace yard were sufficient for the protection of the employees of the defendant company. It appears that the furnace had been in operation for four or five years, and that the decedent had worked at or about the furnace "off and on" ever since it was built, and that when employed the evening before his death he was asked if he had ever worked in that capacity before, and his reply was that he had.

If he had worked as "potman" at the defendant company's furnace before his last employment, and the dangers attending that work were no greater than when he had formerly worked there, no further instruction or warning was necessary. The decedent's mother, who lived near the furnace, testified positively that her son had never worked in that capacity at that furnace. It further appears that the decedent had been absent from Bristol and had only returned the day before his death.

Prior to that time, how long does not appear, the rules of the railway company made it the duty of its employees, and the practice was, before running its locomotives and cars into the yard of the defendant company, to sound certain blasts of the whistle, and to get reply blasts from the "dinkey" engine of the defendant company. At the time the accident occurred the city of Bristol was enforcing its ordinance prohibiting whistling in the yard, and the rule referred to above was no longer in force. It appears that the decedent knew that the railroad company's locomotive and cars might be sent into the defendant company's yard at any time during the day or night, but the record does not show that he knew that the rule or practice referred to was no longer in force, or that they could be brought into the furnace yard without sounding whistle or bell.

After the abrogation of that rule of the railway company, if not before, it was clearly the duty of the defendant company to promulgate rules for the protection of its employees upon its yard, used as it was by the railway company. Two companies operating steam engines and cars upon the same tracks in the same yard, running backwards as well as forwards, at all hours of the day and night, were engaged in such a complex business that, in the exercise of reasonable care, they should have foreseen and anticipated that unless they promulgated rules for the protection of their employees in the discharge of their duties, a collision like that which did occur was not only probable, but inevitable. Failure to promulgate rules under such circumstances is such negligence as renders them responsible for injuries resulting therefrom. *Richmond Granite Co. v. Bailey,* 92 Va. 554, 24 S. E. 232; *Moore Lime Co.* v. *Richardson,* 95 Va. 326, 335, 28 S. E. 334, 64 Am. St. 785; *N. & W. Ry. Co.* v. *Graham,* 96 Va. 430, 434, 31 S. E. 604; 1 Labat on Master and Servant, ss. 210, 211.

The railway company recognized its duty in this respect, and, until the abrogation of the rule requiring its employees to give notice when they were going to enter the defendant company's

yard with engines and cars, and to get a reply from the dinkey engine, its rules seem to have been sufficient; but upon the abrogation of that rule its only rules were the general railway rules which govern when entering its own yards—viz.: not to use excessive speed in the yard, to keep the switches properly set, and to have on the front end of the train in the daytime a man stationed, and at night a lantern.

It does not appear that the decedent had ever been a railway employee, or knew anything about the rules or practices which governed the railway company's employees at the time of the accident.

Under the facts and circumstances of the case, we are of opinion that the defendant was guilty of negligence in not·promulgating rules for the protection of its employees, and, since it had no such rules, in not warning the decedent of the dangers attending his work as "potman" from the use of the defendant company's yard by the railway company.

The defendant company insists that, even if it were guilty of negligence, the proximate cause of the accident was the negligence of the decedent and his fellow-servant, the engineman, in leaving the switch open when they went upon the tipple track with the "dinkey" engine and slag pot.

The evidence of the engineman proves that it·was the habit or custom to leave the switch open when they went out with slag, and to close it when they returned to the main track. Whether or not leaving the switch open, in accordance with that custom, in the absence of any rule on the subject, was contributory negligence, was, under all the facts and circumstances of the case, a question for the jury, and as they might have found that it was not, the Circuit Court did not err in so holding.

We are of opinion that upon the whole case, there was no error in the judgment complained of and that it should be affirmed.

*Affirmed.*