## OKLAHOMA PORTLAND CEMENT CO. v. BROWN.

No. 4582.  Opinion Filed December 22, 1914.

Rehearing Denied February 2, 1915.

(146 Pac. 6.)

1.  **MASTER AND SERVANT—Injuries to Servant—Negligence—Safe Place—Rules and Regulations.** In a suit in damages for personal injuries, where the evidence discloses that, at the time he was injured, plaintiff was at work for defendant in a room or bin 50x50 feet at the base of a pile of cement, which became dangerous and would slide and sweep everything before it when it assumed an angle of more than 45 degrees, that plaintiff was one of the crew engaged in shoveling the cement into sacks, weighing it and trucking it away, that prior thereto and at that time it was a part of the system adopted by defendant in running said business, acting through its foreman, to warn the crew, engaged in undermining the bank, of an impending slide, and that, while so engaged with his back to the bank, a slide occurred, unanticipated by him, and without the customary warning being given, or notice of any kind to him, and he was injured, held sufficient evidence to take the question of negligence to the jury on the allegation contained in the petition, in

effect, that defendant had failed to exercise ordinary care to furnish plaintiff a reasonably safe place to work and proper means to protect him from injury. 'Held, further, that the character of the work was not so complex as to require defendant to make rules and regulations to govern it, as a matter of law.

2. TRIAL—Issue—Submission. Where there is neither allegation nor proof that it was the duty of the master to make rules and regulations governing the work in which plaintiff was employed at the time he was injured, but the court left it to the jury to say whether it was or was not, and charged that, if plaintiff was injured as a result of such failure, defendant was liable, and it further appears that where it is, in effect, alleged that defendant failed to use ordinary care in furnishing plaintiff reasonably proper appliances, but there is no evidence reasonably tending to support the allegation, it was error for the court to submit those issues to the jury, and, it appearing that they were misled thereby, the error is prejudicial and reversible.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;*

*Tom D. McKeown, Judge.*

Action by R. M. Brown against the Oklahoma Portland Cement Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Blanton & Andrews,* and *Wimbish & Duncan,* for plaintiff in error.

*I. O. Lewis, Kennamer & Croakley* and *Rider & Hurt* and *Crawford & Bolen,* for defendant in error.

TURNER, J. On March 4, 1908, R. M. Brown, defendant in error, in the district court of Pontotoc county, sued the Oklahoma Portland Cement Company, plaintiff in error, in damages for personal injuries. His petition substantially states that on February 12, 1908, and for some time prior thereto, he was in the employ of defendant in its cement plant near Ada; that, as such employee, it was his duty to weigh cement after it had been sacked; that his place to work was in a large room or bin, which contained a large quantity of cement; "that by reason of

the fact that defendant corporation had not made the said bin or room in which he was assigned safe, and provided the proper means and appliances to protect him, while so engaged, from injury," there was a slide in the cement which dashed his foot against the scales he was using and injured him; that he did not know of the dangerous nature of the work to which he was assigned, nor had he prior notice or warning of the slide; that by a proper construction of the room his place to work would have been made safe, but, as it was, the room was so negligently constructed as to be unsafe and a dangerous place in which to work. He prayed $5,000 damages. For answer, defendant, after admitting its corporate existence, that plaintiff was in its employ on the day named, and that his duties were as stated, pleaded in effect a general denial, assumption of risk, and that the negligence, if any, complained of was that of a fellow servant. There was trial to a jury and judgment for plaintiff for $3,500, and defendant brings the case here.

For the reason that the evidence reasonably tends to prove negligence, the court did not err in refusing to instruct the jury to return a verdict for defendant. There is little dispute as to the facts. The evidence discloses that on the day he was injured plaintiff was in the employ of defendant in its cement works near Ada; that it was a large plant and employed many men, who worked in crews or gangs, all engaged in manufacturing cement and preparing it for shipment; and that, after it was manufactured, it was conveyed to the packing department and stored in bins, from whence it was sacked and shipped. The bin in which plaintiff was injured was about 50 by 50 feet, made of concrete. The cement was emptied into it from a conveyor attached to the ceiling about 10 or 12 feet from the floor. The spout was near the middle of the room, and, as the cement fell, workmen distributed it about the room until the bin was full, planking up the two doors thereto which opened into a runway. When the bin was full, a crew of four men would, working in the runway,

from a space at the bottom of each of these doors, shovel the cement into sacks and weigh it and truck it away. They rotated in the work; i. e., one would shovel, another would hold the sacks, another would weigh, and another would truck away, until 50 sacks were disposed of. After that they would change work. After the cement had been sufficiently removed from the door, they would work their way into the room, bringing their scales and other appliances with them, and there pursue their work until the bin was empty. Shoveling, as they were, from the base of the bank, the cement would gravitate when it assumed an angle of more than 45 degrees, at which time, being heavy, it was dangerous and would slide and the avalanche sweep everything before it. These slides were frequent and would sometimes occur three or four times a day, but had, it seems, never occurred in the bin where plaintiff had worked since he took service there. It was the duty of the men to look out for and attend to these slides, and, to this end, defendant had provided all proper appliances to enable the men to bring them down in safety and without injury to themselves. At the time of the injury complained of, plaintiff was one of the two crews working in one of the bins, as stated. Each crew had shoveled its way into the bin through one of the doors opening into the runway, and had reached a point in the bin about 15 feet from the door. At that time, and while plaintiff had his back to the bank and a full sack upon the scales, a slide occurred, which carried him to the wall and threw him against the scales and injured his foot. He did not know that the slide was threatened or coming, and was not warned by Moses, the foreman, whose duty it was so to do and, together with the crew, keep a lookout and prevent it. We say not warned or received warning of any kind for the reason he so testified. Moses testified that a few moments before the slide he, from the door of the bin, looked in and warned the crew that the slide was coming. The members of the crew also testified that they saw the slide coming and got out of the way, but that plaintiff made

no effort so to do. As to whether he was warned was the only disputed question of fact in the case, which, for the purpose of determining the question before us, must be resolved in favor of the plaintiff, and so, we repeat, he was not warned. The evidence further discloses that this warning was a part of the system adopted by defendant in running its business; that such it was at the time plaintiff was employed; that such it continued to be up to the time of the injury complained of; and that Moses expressly delegated by the superintendent to give them. If it were not in evidence that the duty to give this warning was a part of the system, this case might well be disposed of by quoting from what we said in *Ft. Smith & Western Ry. Co. v. Ketis,* 26 Okla. 696, 110 Pac. 661, for it is beyond dispute that plaintiff was employed in making a safe place dangerous at the time he was injured, in that he was undermining a pile of cement, which was being rendered constantly more dangerous and liable to slide as the work progressed. In that case we said:

"* * * The well-settled doctrine that the general rule of law which makes it the duty of the master to exercise ordinary care to provide a reasonably safe place in which the servant may perform his service does not apply, where the work the servant is employed to do consists in making a dangerous place safe, or in constantly changing the character of the place, so that it becomes less safe as the work progresses. *Carlson v. Oregon Short Line Ry. Co.,* 21 Or. 450, 28 Pac. 497; *Oleson v. Maple Grove Coal & Mining Co.,* 115 Iowa, 74, 87 N. W. 736; *Gulf, Colo. & Santa Fe Ry. Co. v. Jackson,* 65 Fed. 48, 12 C. C. A. 507; *Finalyson v. Utica Mining & Milling Co.,* 67 Fed. 507, 14 C. C. A. 492. * * * All of said cases elucidate the doctrine above stated, and hold that when a servant engages in the work of making a place that is known to be dangerous safe, or in a work which from its nature the safety of the place necessarily becomes dangerous as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary risks of the employment and are assumed by the servant when he accepts the employment. * * * There are numerous cases in which the employee received his injury while

engaged in excavating under an embankment for the purpose of tearing the embankment down. In such cases every act of the employee was to make the embankment weaker and more likely to fall, and therefore more dangerous. These cases are referred to by some of the courts as Gravel Pit Cases, and in them it is generally held that, where the injury occurs from the falling embankment, resulting from the excavation which the employee was engaged in making, the injury results from a risk incidental to the employment which is assumed by the employee, and no recovery therefor can be had."

But such was in evidence and undisputed, and it remains to be seen what probative force this evidence has, if any, in proving the negligence of the master. 3 Labatt's Master and Servant (2d Ed.) p. 2936, says:

"Where the employer has adopted a system for the purpose of notifying servants of the approach of a certain kind of transitory or sporadic danger, it is plain that the fact of the servant's having relied on the receipt of the customary warning, and being thus induced not to keep as careful a watch as he would otherwise have kept, constitutes a specific and additional reason for holding the master liable for injuries which may result from the omission to give the warning on some particular occasion."

In his note thereto he cites *Anderson v. Ogden Union R. & Depot Co.*, 8 Utah, 128, 30 Pac. 305, where this charge was held to be correct:

"If you find that it was the custom and practice of the defendant, within and for a period previous thereto, to give timely warnings to the employees at such times only as earth was pushed down the bank, or when there was danger, and not at other times, and the plaintiff knew of this custom, and relied upon it, then the plaintiff would have a right to have expected such warning when danger was imminent from such cause, and he would not be expected to keep so constant a watch to detect danger, or so high a degree of care to avoid it, as he otherwise would be required to do at this time."

He also cites *Richmond Granite Co. v. Bailey*, 92 Va. 554,

Form 16

24 S. E. 232, which was a suit in damages for personal injuries. The facts were that Bailey, at the time he was injured, was working in defendant's quarry loading a car of stone, as directed by Campbell, the foreman. While so doing it became necessary to move another car, which had one end of a wire rope attached to it and the other end attached to the drum of an engine. When the engine started up the rope became taut and, as it straightened out, struck plaintiff and injured him. Usually when a car was about to be moved in that manner, it became the duty of one Payne to give warning of the tightening of the rope, so that those endangered thereby might protect themselves.. On the occasion in question he did not do so, but Campbell, the foreman, anticipated the usual warning and being impatient, ordered the engineer to start the engine without delay, which was done without any warning at all. In passing the court held the company liable and said:

"Having made a very salutary regulation for the safety of the men, which required the foreman of each gang to acquaint the men under his charge of the approach of danger, or that something was to be done in the progress of the work which involved risk to those under his care, and the men coming to rely upon it, and to expect it from the accustomed source, it was an act of gross negligence upon the part of Campbell to anticipate the ordinary and usual cource of events by accelerating the movement of the car, in advance of any warning from Payne, or of any sufficient warning from himself to abrogate the rule which he himself had established, and peremptorily to require the engineer to put the engine in motion, thereby converting a wire rope, as one of the witnesses describes it, into an iron bar, and so inflicting the injury complained of. That it was culpable negligence it cannot be denied, and that he was not a fellow servant seems to be equally free of doubt."

In *Anderson v. Northern Mill Co.,* 42 Minn. 424, 44 N. W. 315, the respondent received personal injuries in the appellant's sawmill, where he was employed by one Bartlett, who had a contract with appellant to remove from the mill and pile in its yards

lumber, as it was sawed. The sawing was done in the second story, and both lumber and heavy timber came down to the main platform on the lower story, the lumber in one way and the heavy timber through a slide or chute. As the heavy timbers were liable to come at any time, and with momentum in proportion to their size and weight, in order that the men below might have warning of their approach appellant had adopted the precaution of signaling whenever a timber was sent down the slide and kept a man or boy standing at the head of the slide for that purpose, who shouted or whistled to those at work on the platform. While respondent was at work on the platform, he was struck by a timber which came through the slide without the usual warning of its approach. The only negligence complained of was the failure of the appellant to give the signal at the time. In holding that the company was negligent, the court said:

"The duty, in the abstract, of the appellant to give warning, by signal, of the coming of timbers through the slide, is not involved. It had selected this method of notifying the men at work upon the platform of the coming danger; it had adopted and practiced the custom of giving the warning; and the respondent had every reason to suppose such custom would be continued. It was negligence for the appellant to omit to give the customary signal of approaching danger, and it was not negligence for the respondent, ingrossed as he was in his work, to wholly rely upon it. This subject has been very fully considered and discussed, quite recently, in *Erickson v. St. Paul & Duluth R. Co.*, 41 Minn. 500, 43 N. W. 332 [5 L. R. A. 786]. The cases are alike in all of their essential features."

It will thus be seen that defendant, by adopting a system of warning its employees of an impending slide and having in operation that system at the time plaintiff was employed, impliedly agreed with him, when it put him to work where he was, that defendant would use reasonable care to prevent injury to him from the slide by giving the customary warning. By failing to do so in this instance, defendant breached a duty which it owed to

plaintiff, and which constituted negligence. A similar state of facts existed in *Bradley v. Chicago, M. & St. P. Ry. Co.*, 138 Mo. 293, 39 S. W. 763. There plaintiff was injured by the falling of a bank of earth, at the base of which he was at work. Previous to his employment, and up to the time of his injury, defendant had, by blasting and prying with crowbars, thrown down the top of the embankment in front of the steam shovel and the men working with it, and by this means, to a considerable extent, had minimized the dangers of the falling of the earth. The court said:

"It cannot be fairly said, in the circumstances, that plaintiff assumed all the risks of injury from falling earth. He only assumed such risks as were incident to the work as conducted by defendant. Defendant impliedly agreed, when he employed plaintiff, and put him at a dangerous place to work, that he would use reasonable care to prevent the caving of the embankment upon him."

And so we say that whether or not it was the duty of the defendant to give warning of impending slides, or whether it was the duty of the workmen there employed, including plaintiff, to look out for themselves, we need not say. This for the reason that if defendant assumed that duty, and then negligently failed to perform it, it would be liable to plaintiff, who, having a right to, relied upon its proper performance, and in so doing was injured. *Consolidated Coal Co. v. Scheiber*, 167 Ill. 539, 47 N. E. 1052, was a suit in damages for personal injuries. The facts were that plaintiff was in the employ of defendant as a driver in his coal mine at the bottom of the pit. After being so employed for about five months, he was injured by means of slate falling upon him from the roof of the mine. It was alleged and proved that defendant undertook to prop the roof of the mine, but had done so carelessly, which resulted in the injury. In affirming the judgment of the court below, the court said:

"Whether, therefore, it was the duty of appellant or not to prop the roof, still, if it assumed that duty and undertook to dis-

charge it, and did so in such a careless manner that the roof was thereby loosened and rendered more liable to fall, and the plaintiff was in the exercise of due care for his own safety, as alleged and as ncessarily found by the jury, the appellant would be liable. Having undertaken to perform the work, it became its duty to perform it in a proper manner, whether bound in the first place to perform it at all or not."

· See, also, *Postal T. C. Co. v. Hulsey,* 132 Ala. 444, 31 South. 527; *Horton v. Early,* 39 Okla. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314.

·We are therefore of opinion that the evidence was sufficient to take the question of negligence to the jury upon the general allegation contained in the petition, in effect, that defendant had failed to exercise ordinary care to furnish plaintiff a reasonably safe place to work and provide the proper means to protect him from injury.

But this case must be reversed. In instruction No. 9 the court charged the jury that, if the work was such as to require it, it was the duty of the master to issue safe and proper rules for the conduct of his business. In No. 11 the court further charged that a failure so to do, resulting in injury to plaintiff, would make the defendant liable. In No. 12 the same was repeated. Instruction No. 10 reads:

"If you find from the evidence that the defendant company was negligent in using reasonable care in providing a safe place to work in, or safe appliances with which to work, or if the cement was of such a nature as to require rules and instructions for working therein, then the defendant would be liable to plaintiff for any injury he sustained, if any, by reason of said neglect of the defendant, if any, no matter what the standing or authority of the employees, other than the plaintiff, through whose fault the injury was occasioned."

Which probably was intended to mean that, if the jury found the cement to be of such a nature as to require that defendant

make rules for working therein, defendant would be liable in damages to plaintiff for any injury he might sustain as a result of defendant's failure so to do. This was without the issues, and error. It is nowhere charged in the petition that it was the duty of the master to make proper rules for the conduct of the business, and that his failure so to do resulted in the injury complained of. Neither does the evidence tend to prove, from the nature of the business or otherwise, that such was the duty of the master. And, had it been so alleged, the evidence disclosed that such was not the master's duty, as a matter of law.

20 Am. & Eng. Enc. of Law, p. 102, says:

"Negligence cannot be imputed to the master for failure to make rules and regulations, in the absence of any showing that other masters, engaged in similar lines of business, had adopted rules of the kind claimed to be necessary, or that such rules would be practicable, or useful."

No such showing was here made.

26 Cyc. 1157, says:

"Where a master is engaged in a complex or dangerous business, he must adopt and promulgate such rules and regulations for the conduct of his business and the government of his servants, in the discharge of their duties, as will afford reasonable protection to them. But no duty to adopt rules is imposed upon the master, where the business is neither complex or extrahazardous, where the dangers incident to the work are obvious, or of common knowledge, and fully understood by the servants, or where the practice actually in force renders a rule unnecessary; * * * and where there is no evidence that any rules relating to the business had been adopted by others, or were necessary or practicable, he is not chargeable with negligence in failing to adopt any."

In *T. & N. O. Ry. Co. v. Echols*, 87 Tex. 339, 27 S. W. 60, 28 S. W. 517, it was held that the business of handling railroad ties (that is, of piling them up and then removing them) is not

such a business 'as requires the master to adopt and enforce rules to keep employees from danger from falling ties. In the syllabus of the case it is said:

"Where, as in this case, the work to be done is of that character which could be performed and understood by any laborer of common intelligence, there is no greater danger in its performance than attends any work commonly done in the ordinary avocations of life. In such case no duty lies upon the master to make and enforce rules for the work. This applies to all employees, where the business is such that the danger exists by reason of the very nature of the service."

In *Norfolk & Western Ry. Co. v. Graham*, 96 Va. 430, 31 S. E. 604, it is said in the syllabus:

"It is the duty of a railroad company to prescribe proper rules for the conduct of its affairs, but it is impossible to formulate rules to govern its employees in the performance of every simple service they may be called on to discharge. Something must be left to the care and discretion of the employees themselves."

In *Moore Lime Co. v. Richardson*, 95 Va. 326, 28 S. E. 334, 64 Am. St. Rep. 785, where cars were left on a railroad siding to be loaded, and were then required to be moved a short distance down a single track to a point where they could be loaded, and the work of moving was done, not by steam, but by a gang of laborers, it was held that the work was neither complex nor difficult; and hence the master was not guilty of negligence for failing to adopt a set of rules to control such work. The court said:

"Its failure to do so was not proof of negligence, unless it appeared, from the nature of the work in which the servant was engaged (and it does not), that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity for such rules. *Morgan v. Hudson River, etc., Iron Co.*, 133 N. Y. 666 [31 N. E. 234]."

See, also, *Larow, Adm's, v. N. Y., etc., Ry. Co.*, 61 Hun. 11,

15 N. Y. Supp. 384; *Shaw v. New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515; *Wagner v. N. Y., etc., Co.*, 76 App. Div. 552, 78 N. Y. Supp. 696; *Sanner v. A. T. & S. F. Ry. Co.*, 17 Tex. Civ. App. 337, 43 S. W. 533; *Dooling v. Deutscher Verein*, 97 App. Div. 39, 89 N. Y. Supp. 580.

And so we say for the reason that the work in which plaintiff and his crew were engaged at the time he was injured was no more complex in its nature than to require them to take notice of the law of gravitation, and defendant, as a matter of law, and aside from its assumption of duty to warn, was not required to make rules concerning the work; and hence the court not only erred in charging the jury on an issue not raised by either the pleadings or the proof, but also erred in declaring the law thereupon. This is prejudicial, for the reason that the same was so oft repeated in the charge as to lead us to believe the jury went off on it and found for plaintiff upon an issue not supported by the allegation or the proof. We says this for the reason that nowhere does the court charge on the theory heretofore stated; that is, that defendant would be liable, should they find that defendant failed to warn plaintiff of the approach of danger pursuant to a system previously adopted for that purpose, and upon which customary warning he relied and was injured. Or upon the theory that, apart from defendant, duty to warn in the first instance, if defendant undertook to warn, and negligently failed so to do, in consequence of which plaintiff was injured, defendant was liable. And more, this case should be reversed for another reason. As oft as was repeated said erroneous instruction, the court charged the jury that it was the duty of defendant to exercise ordinary care in providing plaintiff, not only a reasonably safe place to work, but reasonably safe appliances with which to work. As to appliances, this charge was error, for the reason that, although they were alleged to be improper, there was no evidence to support the allegation, and for the further reason that the appliances with which plaintiff and his crew had to work

were shown to be proper, and there was no evidence introduced to prove or tending to prove the contrary.

And so taking the charge as a whole, as it fails to appear that plaintiff prevailed on the only theory upon which he was entitled to recover, the same never having been instructed on by the court, and it appearing that he probably prevailed upon the theory that defendant had failed to exercise ordinary care to furnish him reasonably safe appliances with which to work, or upon the theory that he had failed to issue proper rules and regulations by which to work, and that those issues were wrongfully submitted to the jury, the cause is reversed and remanded for a new trial.

All the Justices concur, except KANE, C. J., absent and not participating.