## Richmond.

### N. & W. R. R. Co. v. Donnelly's Adm'r.

#### March 11th, 1892.

1. FELLOW-SERVANTS.—All serving a common master, working under same control, deriving authority and compensation from same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence.

2. IDEM.— *Case at bar.*—Plaintiff's intestate, engine-man on defendant's locomotive, was killed, without fault on his part, in collision with another locomotive of defendant. The collision was occasioned wholly by the negligent misconstruction of a right-of-way order by the engine·man in charge of the colliding locomotive ;

HELD :

> The two engine-men, though on different locomotives, were fellow-servants, and the defendant was not liable.

Argued at Wytheville.   Decided at Richmond.   Error to judgment of hustings court of city of Roanoke, rendered September 21st, 1889, in an action of trespass on the case, wherein Simon A. Donnelly's administrator, the defendant in error, was plaintiff, and the Norfolk and Western Railroad Company was defendant.   Opinion states the case.

*T. J. Kirkpatrick* and *S. Griffin*, for plaintiff in error.

*Archer L. Payne*, for defendant in error.

LACY, J., delivered the opinion of the court.

Simon A. Donnelly was a fireman on a section of a westbound train of the plaintiff in error in a collision which occurred a few miles west of Lynchburg and about one mile east of Forest Depot. The section of this train was running under and in strict accordance with its schedule going west and entitled to the right of way against all east going trains, except when ordered otherwise, and in this instance had no orders to the contrary.

The collision was caused as is fully explained in the case of *Harris* v. *N. & W. R. R. Co.*, recently decided in this court; opinion by Judge Richardson.

Harris was engine-man on the east-bound train with which the section on which Donnelly was running collided, Donnelly was killed in the collision and Harris was likewise killed, and the suit of *Harris* v. *N. & W. R. R. Co.*, *supra*, was instituted by his administrator for damages on that account against the railroad. It was held in that suit that the accident was caused by the negligence of the deceased together with that of Keith, the conductor, and that there could be no recovery of damages therefor by Harris' administrator. In that case the circumstances of the accident are elaborately and clearly defined and they will not here again be enlarged upon—reference for that purpose being had to the said *Harris' Case, ante*, p. 560.

It is sufficient to say here that the conductor and engineman of the east-bound colliding train misunderstood their orders, which gave them right of way to Island Yard (Lynchburg), against west-bound section of No. 3 of train No. 57, as applying to section No. 2 of train No 57, because a section had been added at Forest Depot to train No. 57, to run as train No. 1 of 57 west of Forest, and that section having been put in the train at Forest to run west, as the sections arrived at Forest they rose one number—No. 1 becoming No. 2; No. 2 becoming No. 3, following the added section. No. 1, Harris' train, to designate it by his name, which was also Keith's train, he being the conductor, was at Forest Depot, and received an order

giving it right of way against No. 3 east of that point to Island Yard (Lynchburg).

No. 1 and No. 2. of 57 had passed, and the question was where they should pass No. 3 of 57. No. 3 of 57 west of Forest had not arrived, and No. 2 east of Forest had not arrived, because these two designations meant the same train. No. 2 east of Forest was No. 3 of 57 when it arrived at Forest, *but not before.* The right of way against No. 3 east of Forest had no application to No. 3 west of Forest, and No. 2 east of Forest, but, as it in terms stated, to No. 3 east of Forest which would be No. 4 at Forest, and which at that time had not left Island Yard.

Being anxious to get to Lynchburg, their home, it being then after midnight, Saturday night, and their train being a material or repair train, and all the hands thereon being from that locality, they consulted their too sanguine wishes, and hurriedly running to their train and without due deliberation, forgetting what they had been informed of, that a section going west had been put in front of train 57 and raised all the numbers of the sections of that train, they pulled out against a train which was then due at that point, and the accident happened as stated. Harris could not recover because he had been guilty of negligence, which was the proximate cause of his injury; but it is not pretended that Donnelly was guilty of any negligence. It is admitted on all hands (1) that Donnelly was not guilty of the negligence which caused his injury, and (2) that his injury was caused by the negligence of Harris. But the railroad company insists that this negligence which caused the injury to Donnelly was the negligence of a fellow-servant, and the risk of this negligence was one of the risks which he assumed when he entered the service of the company, it being conceded that Harris was a skillful and competent servant and employee. Donnelly's administrator denies that Harris or Keith were his fellow-servants, as they were on separate trains, and claims the department of service was different. Upon

demurrer to the evidence by the defendant company below, the hustings court judge overruled the demurrer and there was verdict and judgment for the plaintiff. Whereupon the plaintiff in error applied to this court for a writ of error which was allowed.

The sole question for us to consider in this case is whether the employees (Keith, conductor, and Harris, engine-man), whose negligence caused the injury to the defendant in error's intestate, and the said Donnelly, were fellow-servants within the meaning of the rule which exempts the employer from responsibility to one employee for an injury caused by the negligence of another employee who was his fellow-servant.

An employee or servant cannot recover for injuries received from the negligence of other employees or servants when the principal is not at fault. As to the effect of a demurrer to evidence see *Clark, Adm'r, v. R. & D. R. Co.*, 78 Va. 709; *R. & D. R. R. Co. v. Moore, Id.* 93, and cases cited.

It is well settled that when a servant enters upon an employment he accepts the service subject to the risks that are incident to it. An employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge, from causes open and obvious, the dangerous character of which causes he had opportunity to ascertain. If a man chooses to accept employment, or to continue in it, with a knowledge of the danger, he must abide the consequences so far as any claim against his employer is concerned. It is the duty of the company to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway structures and instrumentalities, and it must not expose its employees to risks beyond those which are incident to the employment and were in contemplation at the time of the contract of service, and the employee has the right to presume these duties have been performed.

The general rule upon the subject of fellow-servants is well stated in a recent publication of great value and usefulness

upon the authority of numerous cited cases; Am. and Eng. Encyc. of Law, p. 821, where it is said : " The general rule resulting from considerations as well of justice as of policy is that he who engages in the employment of another for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, the perils arising from the carelessness and negligence of those who are in the same employment are no exceptions to this rule, and when a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable to one of them for an injury received by him in consequence of the carelessness of another while both are engaged in the same service." It is stated that the reason of this rule is, that " in considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience and to draw from them such rules as will in their practicable application best promote the safety and security of all parties concerned. Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends to a great extent on the care and skill with which each other shall perform his appropriate duty, each is generally an observer of the conduct of the others, can give notice of any misconduct, incapacity or neglect of duty, and leave the service, if the common employer will not use such precautions and employ such agents as the safety of the whole party may require. By these means the safety of each will be more effectually secured than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other."

The master, *as such*, is required to perform certain duties, and the person who discharges any of the duties, no matter

what his rank or grade, no matter by what name he may be designated, cannot be a servant within the meaning of the rule under consideration. He is an agent, and the rules of law applicable to principal and agent apply and the liability of the master depends upon whether such duties are negligently performed. We have often had occasion to consider the duties incident upon the master as such, and they are stated in numerous decisions of this court. Among these is the duty of properly selecting his servants. And it is the duty of the master to select with due and resonable care careful, responsible and trustworthy co-employees; he must on engaging a man make reasonable investigation into the character, skill and habits of life of the person. If this is not done, it is negligence, and he may be held liable for an injury to another employee occasioned either by his negligence, incapacity or intemperance.

It is another duty of the master to make such needful rules and regulations and such proper provision for the safety and protection of the employees as will afford them reasonable protection against the dangers of the service incident to the performance of their respective duties. These duties have been well expressed in concise form as follows : " The duty of master to the servant, and the implied contract between them is to the effect that the master (1) shall furnish proper and adequate machinery and appliances for his work; (2) and shall employ skillful and competent fellow-servants, and shall use due and reasonable care to that end. This duty is to be affirmatively and positively fulfilled and performed." *Luning* v. *N. Y. Central R. R. Co.*, 49 N. Y. 521. Opinion of Folger, J.

And again it is said in another case, " The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal with-

out regard to the rank or title of the agent entrusted with their performance. As to such acts the agent occupies the place of the corporation, and the latter should be deemed present, and, consequently, liable for the manner in which they are performed. If an agent, whose duty it is to employ servants or provide materials for the company, acts negligently, his fault is that of the company, because it occurred in the performance of the principal's duty, although only an agent himself." *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549, 553. It is therefore considered that " the true rule for determining who are fellow-servants is to be determined not from the grade or rank of the offending or injured servant but is determined by the *character of the act* of the offending servant. If it is an act that the law implies a contract duty upon the part of the employee to perform, then the offending employee is not a servant but an agent; but as to all other acts they are fellow-servants." 7 Amer. and Eng. Encyc. of Law, 834. " But all who serve a common master, work under the same control, derive authority and compensation from the same common source, are engaged in the same general business, although it may be in different grades or departments of it, are fellow-servants who take the risk of each other's negligence." Thomp., 2 Vol. 1026, § 31. Wood is to the same effect. 3 Wood's Ry. Law, § 338.

Mr. Beach says : " It is generally held that all servants in the employment of the same master, subject to the same general control, paid from a common fund, and engaged in promoting or accomplishing the same common object, are to be held fellow-servants in the same common employment." Beach Con. Neg., p. 338, § 115.

The general rule as to fellow-servants must be considered with reference to what has gone before as to a person who is performing duties imposed by law upon the master. Such a servant stands upon the principles of agency in the lieu and stead, or, as is sometimes said, in the shoes of the principal,

and is not a fellow-servant as to those beneath him who are subject to his control and direction.

In this case the offending servant was the engineer on a colliding train. The injured servant was a fireman on the other train in collision with the first. They had a common master and a common employer; they were running then, and accustomed daily to run, on their engines upon the same road. They were meeting each other at the time of the accident; that is, going in opposite directions; but the day before they may have followed each other, as their engines were turned back or hurried forward, passing others under orders. They had a common rendezvous in the company's engine-yards, or common place for cleaning or inspection, or repairs, and neither had any control or direction, or superintendence whatever over the other. Neither was exercising the duties imposed by law upon the principal to which we have referred; nor were they representing the principal in any way as to each other, but they were fellow-servants within the clear and unquestionable limits of the rule as to fellow-servants; they were in the same department of the service, although on different trains.

Neither was incompetent or unskillful. There had been no negligence on the part of the master in any way in the performance of any duty, through duly authorized agents, nor otherwise. There was no defect in the roadway, nor the structures; no defect nor imperfections in the rules and regulations, nor in the issuance of its orders. The sole cause of the accident and consequent injury was the negligent construction of a right-of-way order, which involved the construction by the servant that in a train with sections running separately and numbered, that there were two sections bearing the same number, at the same time, up to a point designated, when the numbers were changed, and they had by entering into the service for hire, taken upon themselves the natural and ordinary risks and perils incident to the perils of such service, among which are to be included

the perils arising from the carelessness or negligence of those who are in the same employment as fellow-servants. The defendant in error's intestate must, therefore, be held to have assumed the peril from which he suffered by entering into the service of the company, and his administrator is not entitled to recover anything from the said company for the injuries received by him. And the hustings court having decided otherwise, the said judgment will be reversed and annulled.

JUDGMENT REVERSED.