101  193
107  559

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## W. R. TRIGG CO. v. LINDSAY.

February 5, 1903.

1. MASTER AND SERVANT—*Fellow Servants—Case at Bar.*—All serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades and departments, are fellow servants, and take the risk of each other's negligence. In the case at bar two servants were engaged in erecting a piece of machinery, when one of them was injured in consequence of the negligence of the other. For this the master is not liable.

2. MASTER AND SERVANT—*Unfit Servant—Notice to Master—Burden of Proof—Case at Bar.*—The burden of proving negligence in selecting and continuing an unfit servant is on the plaintiff. He must prove the specific act of negligence on which the action is founded, and this, of itself, may in some cases prove incompetency, but not notice thereof to the master. In the case at bar there is no evidence of unfitness except the act which is the foundation of the action, and of this the master could not have had notice

3. MASTER AND SERVANT—*Unsafe Machinery—Erection of Machinery—Case at Bar.*—In the case at bar the plaintiff was injured by the negligence of a fellow servant while assisting him in the erection of machinery, and not in its *use.* The injury received was one incident to the employment, and the rule requiring the master to use ordinary care to provide the servant with reasonably safe machinery with which to work does not apply. He was not engaged in the use of the machinery but was assisting in its erection.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered February 18, 1902, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*J. Alston Cabell* and *J. Jordan Leake*, for the plaintiff in error.

*R. T. Lacy* and *John A. Lamb*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was an action of trespass on the case brought by Lindsay to recover damages for an injury sustained while in the employment of the Trigg Company, in which the jury rendered a verdict in favor of the plaintiff, subject to a demurrer to the evidence. The court overruled the demurrer and gave judgment for the plaintiff, and the case is before us upon a writ of error.

The case presented is as follows: Donovan and another employee were engaged in putting up shafting and pulleys by which emery wheels used in the business of the Trigg Company were made to revolve. The power was communicated through leather belts, which it was the duty of Lindsay to lace; the shafts, the pulleys, the belt, and the emery wheels constituting, when placed in proper relations to each other, a completed machine. When the power was applied and the machine put in motion, the belt, instead of running true, moved in a zigzag or wabbled, as we may say, and Lindsay was directed to hold a stick against the belt to keep it upon the pulley while a part of the machinery was being oiled. By reason of the improper adjustment of the pulleys, due to the ignorance or carelessness of Donovan, a speed of more than 4,000 revolutions per minute was given to the emery wheels, while it was intended that they should sustain, and they had been tested for, from 1,500 to 1,600 revolutions per minute. In a very short time after the machine was put in motion, estimated by the witnesses at not more than three minutes, two of the emery wheels burst, and a fragment coming in contact with Lindsay's hand, inflicted upon him a severe injury.

There can be no doubt that the machine which was being put together was incomplete until the band had been properly laced and adjusted to the pulleys. The machine was as incapable of useful operation without the band as it would have been without the shaft or pulley. This appears from the evidence of several of the witnesses, and seems to be obviously true. The improper arrangement of the pulleys was the direct cause of the accident, and this resulted from the fault of Donovan, who was a fellow-servant of the defendant in error.

As was said by this court in *Donnelly's Admr.* v. *Railroad Co.*, 88 Va. 853, 14 S. E. 692: "All serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence."

The same principle is asserted in the following cases more recently decided by this court: *Norfolk, &c. R. Co.* v. *Nuckols' Admr.*, 91 Va. 193, 21 S. E. 342; *Ford* v. *Locomotive Works*, 94 Va. 627, 27 S. E. 509; *Moore Lime Co.* v. *Richardson's Admr.*, 95 Va. 326, 28 S. E. 334, 64 Am. St. Rep. 785; *Norfolk & W. R. Co.* v. *Houchins*, 95 Va. 398, 28 S. E. 578, 46 L. R. A. 359, 64 Am. St. Rep. 791; and *Southern R. Co.* v. *Mauzy*, 98 Va. 692, 37 S. E. 285.

"The burden of proving negligence in selecting or continuing an unfit servant is upon the plaintiff. He must prove the specific negligent act on which the action is founded, which may, in some cases, but not generally, be such as to prove incompetency, but never can, of itself, prove notice thereof to the master." 1 Shear. & Red. on Neg., sec. 192.

Donovan had been for a long time in the employment of the Trigg Company. There is no evidence of his unfitness or incapacity to perform the duties assigned him, except the negligent act which caused the injury under investigation, and of that negligence it is obvious that the master could have had no notice.

Nor does the evidence support the charge that the Trigg Company failed in its duty to use ordinary care to provide reasonably safe machinery for the use of its employees. The machine here was in process of erection. It had not been completed and made ready for operation. The several persons engaged in putting it together were all employed about the same business, performing different parts of the same duty, perfecting the machine which it was the duty of the master to use ordinary care to make reasonably safe for those who were to use it when completed. If the emery wheels had not burst until this manchine had been turned over, and was being operated as it was designed that it should be in doing its part in the work of the Trigg Company, and an employee had been injured by reason of its faulty construction, it may be that ground would have existed for holding the Trigg Company liable for the injury.

The distinction which we are here making is well illustrated by the case of *Murphy* v. *Boston & Albany R. R. Co.*, 88 N. Y. 146, 42 Am. Rep. 240. In that case Francis Murphy, the plaintiff's intestate, was engaged, by the direction of the master mechanic of the shop, in setting the safety valve upon an engine which was in the shop for repairs so as to allow a pressure in the boiler of 133 pounds to the square inch, which was the highest limit of steam permitted in the use of locomotives on that road. When sent to the shops certain defects were reported by the engineer, but it was a rule of the company, known to the employees, that not only should the defects reported be repaired, but an examination should be made to see if any other defects could be discovered, and if there were any of a slight nature, they should be repaired first and reported afterwards, but if of a serious nature they should be reported first and repaired afterwards. The boiler in question, under the pressure to which it was subjected, burst, and after the explosion it was found on examination that twenty of the stay-bolts on the right side of the boiler were broken, the fractures being apparently

old, and the right side sheet near the mud ring, which was originally five-sixteenths of an inch in thickness, had been worn down to one-sixteenth of an inch. The evidence tended to show that the explosion was attributable to these defects, which rendered the boiler incapable of sustaining the pressure directed to be put upon it, and that the defects would have been discovered by the boiler-makers if they had performed their duty to make thorough inspection of the boiler, with a view to ascertaining whether any defects existed. In the trial court the plaintiff was non-suited, and upon appeal the court said:

"The master does not guaranty either the competency of the co-servants, or the safety of the machinery and appliances. He undertakes to use due and reasonable care in both respects, and that there shall be no negligence on his part, or on the part of any person intrusted by him with the business of employing servants and providing safe machinery, etc. It is plain that the master's liability, if sustained in this case, rests upon the second exception stated, viz.: the negligent furnishing of an unsafe machine for the use of the intestate. The competency of the boiler-makers and machinists employed in repairing the locomotive before it came to the hands of the intestate and Smith, is not questioned. The rules of the shop were comprehensive, and required a full examination by the boiler-makers and machinists, to discover defects. Their negligence is not a ground of action against the master, unless, as between the intestate and the master, it was the master's duty to ascertain before the intestate and Smith were put to setting the valve, that the boiler was safe and would bear the required pressure. We think this case is not within the principle which holds the master responsible for unsafe machinery furnished for the use of the servant. The case of *Fuller* v. *Jewett* (80 N. Y. 46, 36 Am. Rep. 575) is a distinct authority for the proposition, that if this locomotive had been sent out from the shop, and afterwards exploded while in use on the defendant's road, injuring

the engineer or other servants of the defendant, the company would have been responsible. The negligence of the boiler-makers, in the case supposed, would be regarded as the negligence of the master. The risk of the negligence of the repairers and machinists would not be considered one of the risks which a servant, in whose hands the machine was subsequently placed for use, had assumed. The placing of the locomotive on the road for use would be an assurance that it was fit and safe; and an engineer, or other servant employed on the train, could not be supposed to have known the condition of the locomotive, or whether the men employed to make repairs were competent, or the manner in which the work had been done. In this case Murphy was not, we think, a servant, in whose hands the loco-motive was placed by the defendant for use, within the principle of *Fuller* v. *Jewett*, and like cases. The locomotive was sent to the repair shop in order that it might be made fit for use. The mechanics in the repair shop, including the intestate, were employed for the purpose of repairing defective locomotives. The intestate and his co-laborers in the shop were engaged in the same department of service, worked under the same control, and in the case in question the boiler-makers and the other mechanics were employed to effect the same object, viz.: the reparation of the 'Sacramento.' It is true that the work was done in successive stages, and different parts of the work were intrusted to different persons. The refitting of the valve, and its adjustment to the required pressure, were the last things to be done. This work was, however, as necessary as fitting the locomotive for use, as the work of the boiler-makers or machinists. The intestate had an opportunity to inform himself of the competency of his co-servants in the shop. He doubtless supposed that the boiler-makers had performed their duty; unfortunately they had neglected it. But we think the risk of their negligence was one of the risks he assumed, as incident to his employment in the common service. It would be too close a

construction, to hold that the repairs were completed when his work commenced, and that the setting of the valve was independent and disconnected service in respect to a machine put into his hands by the company for use. This claim of the plaintiff's counsel would make the master responsible to each successive employee engaged on the repairs for any negligence of a co-employee, whose work was prior in point of time, although done in effecting the common purpose in which all were engaged. This would, we think, be extending the liability of the master further than is warranted by the adjudged cases."

We have quoted thus fully from this case because it aptly illustrates the principles which control that under consideration.

We do not think that there is any evidence that the Trigg Company failed to perform its duty in the selection of servants, or in providing machinery for the use of its employees, and the judgment complained of must be reversed.

*Reversed.*