Statement.

# Richmond.

## SOUTHERN RAILWAY CO. v. SMITH.

November 21, 1907.

Absent, Cardwell, J.

1. RAILROADS—*Fellow Servants—Yard Master and Engineer—Former Law.*—A yard master of a railroad company, who had no power to employ or discharge servants, but who directed the movements of trains on the yard, the shifting and changing of cars and the making up of trains, and who possessed none of the powers of a vice-principal, was a fellow servant of an engineer running an engine on the yard as the law stood prior to the adoption of the present constitution.

2. RAILROADS—*Fellow Servants—Yard Master and Engineer—Present Law.*—The present constitution has abolished the fellow-servant doctrine in cases like that stated in paragraph 1 above, and the company is liable for an injury inflicted on a yard master through the negligence of the engineer.

3. RAILROADS—*Fellow Servants—Constitutional Provision—Yard Master Riding on Switching Engine—"Requiring."*—If the presence of a yard master on a switching engine is in the usual and proper discharge of his duties, he is rightfully there, and is entitled to the benefit of the protection afforded him by the constitutional provision abolishing the fellow-servant doctrine as to every employee engaged in any service requiring his presence on a train, car or engine. The word "requiring" will not be given such a restrictive meaning as to exclude employees of this class.

4. VERDICTS—*Excessive Damages.*—The verdict of a jury will not be set aside as excessive unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

Error to a judgment of the Circuit Court of Amherst county

in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Horsley, Kemp & Easley,* for the plaintiff in error.

*Lee & Howard,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This writ of error brings up for review the proceedings in an action, brought by the defendant in error, to recover damages for a personal injury alleged to have been occasioned him by the negligence of the plaintiff in error. There was a verdict and judgment in favor of the plaintiff for $15,000, which we are asked to reverse and set aside.

The essential facts established by the record are that the plaintiff was in the employment of the defendant railroad company as yard foreman and station agent at Monroe, a division terminal, in Amherst county. His duties required him to superintend generally the operations in the yard, and among other things to go from point to point therein, switching cars, making up trains, and getting them in and out of the yard. In the discharge of these constantly recurring duties, in an extensive yard, it was customary and necessary for the plaintiff to ride from point to point on the switching engine. He had been engaged with duties of this character on the evening of the accident, and was returning from the performance of his work in the direction of the yard office, standing, as was his custom, on the step of the engine, holding to the handholes placed there for the purpose with both hands. The position of the plaintiff on the step of the engine was within two feet of the engineman, who was then and there directed by the plaintiff as to the next

point to take the engine, and further told to slow up as he passed the office, in order that the plaintiff might get off for the purpose of discharging certain duties there that demanded his attention. As the office was approached, the engineman, with full knowledge of the plaintiff's position, applied the steam in such manner as to cause the engine to suddenly and violently lunge forward, in an unusual and dangerous manner, thereby throwing the plaintiff to the ground and under the wheels of the engine, which crushed and destroyed his arm.

We are of opinion that the negligence of the defendant company is clearly established, and that the evidence is quite sufficient to justify the conclusion of the jury that the plaintiff was not guilty of contributory negligence.

The assignment of error chiefly relied on involves the relation existing at the time of the accident between the plaintiff and the engineer. The theory of the plaintiff, which was adopted by the trial court, is that, at the time of the commission of the negligent act complained of, he was a fellow servant of the engineer with the same right to recover of the defendant that he would have had if such negligent act had been that of the defendant company itself in the performance of a non-assignable duty; it being insisted on behalf of the plaintiff that he comes within the provisions of section 162 of the constitution, which abolishes the doctrine of fellow servant as to certain classes of railroad employees, so far as it affects the liability of the master for injuries to his servant resulting from the acts or omission of any other servant or servants of the common master.

The contention of the defendant company is, that the presence of the plaintiff on the engine was not *required* by the services in which he was engaged when injured, and, therefore, that the company is not liable, although the injury was inflicted by the negligence of the engineer. It is further contended on behalf of the railway company that the plaintiff was not a fellow servant of the engineer, but that, as yard foreman and station

agent, he occupied the master's position as to the engineer, who was an inferior servant; and that as such vice-principal, claiming for injury from his subordinate's act, the defense of assumed risk is not intended to be touched by section 162 of the constitution.

Omitting such parts of section 162 of the constitution as do not apply to this case, it reads as follows: "The doctrine of fellow servant, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant or servants of the common master, is * * * abolished as to every employee engaged * * * in any service requiring his presence upon a train, car or engine; and every such employee shall have the same right to recover for every injury suffered by him from the acts or omissions of any other employee or employees of the common master that a servant would have * * * if such acts or omissions were those of the master himself, in the performance of a non-assignable duty; provided the injury so suffered by such railroad employee result from the negligence of * * · * a co-employee engaged in another department of labor * * * or who is in charge of any switch, signal point, or locomotive engine."

The language "every employee engaged * * * in any service requiring his presence on a train, car or engine," manifestly means every one who may be there in the line of duty. We cannot pick out the single word "requiring" and attach to it the restrictive meaning contended for by the railway company. This would exclude from the benefits of the constitutional provision every employee except those actually engaged in the operation of the engine, although the presence there of some other might be in the line of a reasonable and proper discharge of his duty. If his presence on the engine is in the usual and proper discharge of his duty, he is rightfully there, and is entitled to the benefit of the protection afforded him by the constitution.

Looked at from the standpoint of a demurrer to the evidence, as this record must be, the undisputed facts are that the duties of the yard foreman required him to accompany and ride upon the yard engine from one point to another in the yard; that it was both proper and customary for him to ride on the engine, as he was doing at the time of the accident; that his position on the step of the engine was not only a reasonably safe place, but that it, was the place at which it was usual, customary and proper for him to be. There is no denial that the plaintiff had so interpreted the requirements of his position for years, and it does not appear that the railway company expected such duties to be discharged in any other way.

As to the contention that the yard foreman and the engineer were not fellow servants, under the law as it was prior to the date on which the constitution of 1902 became effective, it clearly appears that the yard foreman had no authority or power over the yard engineer, except to direct him when and where to move his engine in shifting and transferring cars on the yard. He possessed none of the power of a vice-principal, such as the right of selection, employment or discharge of the engineer, or any authority over him in the operation of the engine. He could only direct his movements on the yard as any other foreman or boss could do. If the engineer disobeyed or was for any reason unsatisfactory, the yard master could only report him to a common superintendent for his action.

All serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow servants, and take the risk of each other's negligence. *Donnelly's Admr.* v. *N. & W. Ry. Co.,* 88 Va. 853, 14 S. E. 692.

In the case of *N. & W. Ry. Co.* v. *Nuckols,* 91 Va., on p. 207, 21 S. E. 347, the principle is succinctly stated as follows: "The liability does not depend upon the fact that the servant injured

may be in a different department of the service from the wrong-doer. The test is, were the departments so far separated from each other as to exclude the probability of contact, and of danger from the negligent performance of their duties by employees of the different departments. If they are so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow servant in such other department. The liability does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal or vice-principal."

In the case of *Richmond Locomotive Works* v. *Ford,* 94 Va. 543, 27 S. E. 511, this court says: "Where the execution of work directed to be done by the master or his representative is entrusted to a gang or group of hands, it is necessary that one of them should be selected as the leader, boss or foreman to see to the execution of such work. This sort of superiority of service, as has been said, is so essential and so universal that every workman in entering upon a contract of service must contemplate its being made in a proper case. He, therefore, makes his contract of service in contemplation of the risk of injury from the negligence of any other fellow workman. The foreman or superior servant stands to him in that respect in the precise position of his other fellow servant."

In the case of *N. & W. Ry. Co.* v. *Houchins,* 95 Va. 404, 28 S. E. 580, 60 Am. St. Rep. 791, 46 L. R. A. 359, this court says: "And the mere fact that another engaged in the same work or employment is, by the rules of the master for the direction and government of those in his employ, made a leader, boss or conductor, or by whatever name he might be designated or known, to see to the execution of the work, and by the neglect of this leader, boss or conductor, one engaged in the same common work of the master is injured, does not, of itself, place the one so put in authority in the category of principal

or vice-principal." And again, on page 406, it is said: "The running of trains by a railroad company is work of such a character as to make it essential that one of the crew on each train be selected as a leader, boss or conductor, as he is always known, to direct the execution of the work, and this kind of superiority it may be said, is as essential and universal in the moving of trains upon a railroad, as in other pursuits when the employees work in squads, gangs or crews. Every man, in entering upon a contract of service upon a train, as fireman, engineman or brakeman, must contemplate its being run under the orders and direction of a conductor, who, though designated as conductor, with authority to control and direct the men under him, is but a co-laborer, or co-workman, with the other members of the crew engaged in a work of mere operation, a common employment, under one and the same common employer, from whom all derive their authority and compensation." See also *Moore Lime Co.* v. *Richardson*, 95 Va. 326, 28 S. E. 334, 64 Am. St. Rep. 785; *Eckles* v. *N. & W. Ry. Co.*, 96 Va. 69, 25 S. E. 545; *Southern Ry. Co.* v. *Mauzy*, 98 Va. 692, 37 S. E. 285; *Trigg* v. *Lindsay*, 101 Va. 193, 43 S. E. 349.

In view of the evidence in this case, and under the law as it was when the present constitution became effective, as shown by the authorities cited, the relation existing between the yard foreman and the yard engineer in question was that of fellow servant.

The presence of the plaintiff in this case being, as we have seen, required upon the yard engine at the time of the accident, and the relation existing between himself and the engineer being that of fellow servants, he comes clearly within the protection afforded such an employee by the provisions of section 162 of the constitution, which abolishes the fellow-servant doctrine, so far as it affects the liability of the master for injuries to his servant, resulting from the acts or omissions of any other servant or servants of the common master. This provision of the

constitution makes no distinction between superior and inferior servants. The language is, "abolished as to every employee of a railroad company engaged in any service requiring his presence upon an engine; and every such employee shall have the same right to recover," etc.

These considerations dispose of the material questions raised by the exceptions taken to the action of the circuit court in giving and refusing instructions. The instructions given conform to the view of the law herein expressed, and submit the case to the jury without prejudice to the rights of the plaintiff in error.

It is further assigned as error that the verdict is excessive.

It is true that $15,000 is a larger verdict than we usually encounter as an award of damages for the loss of an arm; but this furnishes no warrant for our interference with the finding. The question to be considered is not, whether this court, if acting in the place of the jury, would give more or less than the amount of the verdict, but whether the damage awarded by the jury is so large or so small as to indicate that the jury has acted under the impulse of some undue motive, some gross error, or misconception of the subject. There is no rule of law fixing the measure of damages in such cases, and it cannot be reached by any process of computation. It is, therefore, the established rule, settled by numerous decisions extending from *Farish & Co. v. Reigle,* 11 Gratt. 697, 62 Am. Dec. 666, to the recent case of *N. & W. Ry. Co. v. Carr,* 106 Va. 508, 56 S. E. 276, that this court will not disturb the verdict of the jury, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. The record in the case at bar furnishes no suggestion that the jury were influenced by partiality or prejudice, or by any misconception of the merits of the case; nor is there anything to indicate that

they were not moved to their conclusion from a sense of right and justice.

The circuit court did not err in refusing to set the verdict aside, and its judgment must be affirmed.