## Richmond.

## R. B. WHITTEN v. JOHN H. McCLELLAND.

### November 15, 1923.

1. APPEAL AND ERROR—*Harmless Error—Error not Affecting Substantial Rights of the Parties—Refusal to Admit Evidence to Contradict Record as to Time of Filing of Declaration—Case at Bar.*—In the instant case, an action for personal injuries against appellant and others, the defendants offered to prove that the entry in the clerk's rule book showing the declaration filed as of a certain date was incorrect, and that the same was not in fact filed until after more than one month had elapsed from the date on which process had been returned executed as to one or more of the defendants. The evidence thus offered was intended to pave the way for a motion, under sections 6079 and 6140 of the Code of 1919, first to correct the alleged mistake in the entry, and then to dismiss the suit for failure of the plaintiff to file the declaration in time. The court refused to permit the introduction of this evidence. There was no contention that the declaration was not filed within thirty days after process was returned executed as to appellant, and there was no judgment against any of the defendants except appellant, and as to him it did not appear that failure to file the declaration at an earlier day was or could have been prejudicial.

   *Held:* That if it be conceded that the clerk and court are both in error, the error was not one for which the judgment could be reversed, because it would fall under the intendment of section 6331 of the Code of 1919, which provides, in substance, that no judgment or decree shall be reversed for any error committed at the trial which does not affect the substantial rights of the parties.

2. PLEADING—*Time of Filing Declaration or Bill—Section 6079 of the Code of 1919—Semble.*—Section 6079 of the Code of 1919 provides that "if one month elapses after the process is returned executed as to any one or more of the defendants, without the declaration or bill being filed, the clerk shall enter the suit dismissed, although none of the defendants have appeared." It would seem that this section merely intends to direct the clerk to dismiss the suit as to the defendants against whom process has been returned executed for more than thirty days prior to the filing of the declaration on bill. Such an

interpretation would seem to meet the mischief which the statute was intended to cure.

3. ASSIGNMENT OF ERRORS—*Error in Instructions—Specifying Error.*—A number of instructions were given over the objection of the defendants, and a number of others requested by them were refused; but the only point specified against the action of the court was thus stated in the petition: "The chief objection to, and error in, the instructions is that they submitted to the determination of the jury the question whether the plaintiff was guilty of 'contributory negligence.'"

*Held:* That except as to this ground, the assignments of error relating to the instructions were plainly insufficient.

4. STREETS AND HIGHWAYS—*Personal Injuries—Contributory Negligence of Plaintiff—Question for Jury—Case at Bar.*—Plaintiff was injured by running into an excavation on the side of the abutment of a bridge which was under construction. There was evidence tending to show that plaintiff was not very familiar with the course of the road or the relative location of the bridge. It was dark and raining when he ran into the excavation, and he testified that there was no barricade, light, or adequate warning at or near the point, and that he did not discover the danger until too late. On the other hand, there was evidence from which the jury might have inferred that he was negligent.

*Held:* That the question of plaintiff's negligence was properly left to the jury.

5. STREETS AND HIGHWAYS—*Night—Presumption of Safe Condition.*—Travelers using a highway at night have a right to presume that it is in a reasonably safe condition.

6. DAMAGES—*New Trial—Personal Injuries—Damages Not Excessive—Case at Bar.*—In an action for damages for injuries arising out of an accident due to a defective highway, the jury found a verdict of $1,200 for the plaintiff. The injury to plaintiff's car was repaired for $96, but plaintiff's personal injuries were painful and serious, including the loss of two teeth and the fracture of a jawbone.

*Held:* That the verdict was not so large as to enable the appellate court to say that the jury was actuated by partiality or prejudice, and therefore could not be set aside as excessive.

7. STREETS AND HIGHWAYS—*Personal Injuries—Excavation—Subsequent Precautions after an Accident—Case at Bar.*—In the instant case, an action against an employee of the State Highway Commission for injuries sustained in an action arising out of plaintiff's driving into an excavation, the primary question in the case was whether the defendant had used ordinary care to provide reasonably adequate warnings for the protection of persons using the highway at the point of the accident. Defendant had testified that piles of lumber and sand

had been placed on the highway at or near the point where the accident occurred in such a way as to constitute a customary and sufficient warning to travelers. On cross-examination, counsel for the plaintiff elicited from him the admission that in a few days after the accident he had placed a barricade across the road on the south side of the excavation.

*Held:* That this evidence ought to have been excluded.

8. NEGLIGENCE—*Evidence—Subsequent Precautions after an Accident.*—It is settled law in this State, and the weight of authority is to the same effect, that evidence of precautions taken after the happening of an accident is not admissible to prove antecedent negligence.

9. STREETS AND HIGHWAYS—*Personal Injuries—Excavation—Subsequent Precautions after an Accident—Case at Bar.*—In an action for injuries arising from driving into an excavation beside a highway, the court permitted plaintiff on cross-examination to elicit from the defendant that after the accident he had placed a barricade across the road on the south side of the excavation. The trial court permitted this evidence to go to the jury over the objection of defendant, as having a tendency to show that defendant was mistaken about the usual custom which he had testified to of relying upon material placed along the side of the highway as a customary warning of danger.

*Held:* That the mere statement of the trial court to counsel of the reason for the ruling, without expressly telling the jury that they could not consider the evidence as tending to prove antecedent negligence, was not a sufficient safeguard against prejudice to the defendant. Moreover, defendant had explained why the barricade had been erected, and the language used by the court had a tendency to discredit that explanation.

10. STREETS AND HIGHWAYS—*Personal Injuries—Excavation—Subsequent Precautions after an Accident—Case at Bar.*—In the instant case plaintiff was injured by driving into an excavation on the side of an abutment of a bridge which was under construction. Defendant relied on the fact that piles of lumber and sand had been placed along the side of the highway at or near the point of the accident in such a way as to constitute a customary and sufficient warning to travelers. On cross-examination of defendant it appeared that after the accident defendant had built a barricade along the south side of the excavation.

*Held:* That this evidence was not admissible to disprove the general custom testified to by defendant that piles of material along the highway constituted a sufficient and customary warning to travelers, and should have been excluded. The evidence did not seem to have been offered for the purpose of disproving the general custom as testified to by the witness, but its apparent purpose was to prove a subsequent fact at variance with the general custom, which tended to show that such a custom was negligent.

11. APPEAL AND ERROR—*Objections to Evidence—Same Evidence Elicited by
    Party Objecting.*—It is a well settled and obviously sound general
    rule that an objection to evidence cannot be availed of by a party
    who has, at some other time during the trial, voluntarily elicited the
    same evidence, or has permitted it to be brought out by his adver-
    sary without objection.   The rule finds its most frequent application
    in cases where the party making the objection *afterwards* introduces
    the same evidence, but it is properly and logically applicable in any
    case, regardless of the order of introduction, if the party who has
    brought out the evidence in question, or who has permitted it to be
    brought out, can be fairly held responsible for its presence in the
    case.

12. APPEAL AND ERROR—*Objections to Evidence—Same Evidence Elicited by
    Party Objecting—Case at Bar.*—In the instant case, an action for in-
    juries sustained in driving into an excavation beside a highway,
    plaintiff on cross-examination volunteered statements to the effect
    that after the accident additional precautions had been taken by
    defendant to warn travelers of the excavation.   No exception was
    noted to these statements of plaintiff, counsel for the defendant
    merely admonishing him that his answers were not responsive.
    Later on, when the fact that subsequent precautions had been taken
    was apparently about to become an issue in the case, defendant not
    only objected, but moved the court, ineffectually, to strike such
    evidence out.   This motion did not in terms apply to the voluntary
    statements on that subject by plaintiff when under cross-examina-
    tion.   But if the motion had expressly embraced these statements,
    the court's ruling would not have been different, and, under the cir-
    cumstances, the failure of defendant to make a more formal objec-
    tion to such statements at the time plaintiff made them could not
    be held to have operated a waiver by the defendant to the admission
    of evidence as to subsequent precautions.

13. NEGLIGENCE—*Evidence—Subsequent Precautions*—Where the court and
    opposing counsel thought that plaintiff was intentionally proving
    that after the accident subsequent precautions were taken, and the
    jury in all probability would have thought the same thing, the evi-
    dence, thus developed, regardless of the purpose of counsel in elicit-
    ing it, was calculated to prejudice the defendant.

14. NEGLIGENCE—*Evidence—Precautions Subsequent to Accident—Time of
    Objection.*—In an action for negligent injury the trial court permitted
    plaintiff to elicit from defendant on cross-examination that after the
    accident precautions had been taken to avert further accidents.
    Objection was made by defendant's counsel as soon as this dangerous
    drift of the cross-examination became apparent, and was repeated
    when counsel for plaintiff seemed to emphasize that subsequent pre-
    cautions had been taken, and was finally again repeated in the form

of a motion to exclude. Plaintiff contended that defendant did not except in due time and manner.

*Held:* That the motion to exclude alone would have been sufficient and timely, even if no previous objections had been made.

15. APPEAL AND ERROR—*Reversal in Part, Affirmance in Part—Damages—Section 6365 of the Code of 1919.*—In an action for damages for personal injuries where the judgment is reversed and the cause remanded for error in admitting evidence, where as to the amount of damages the case was fully developed, and the parties had a fair trial, pursuant to section 6365 of the Code of 1919, the Supreme Court of Appeals directed that the question of the amount of damages should not be tried again, but that if upon another trial the verdict should be for the plaintiff, the court should enter a judgment thereon in favor of the plaintiff for the amount of damages awarded in the first trial.

Error to a judgment of the Circuit Court of Botetourt county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*A. Willis Robertson, J. F. Hall* and *John Dabney Smith,* for the plaintiff in error.

*H. A. White* and *Haden & Haden,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

In the year 1920, the State Highway Commission was constructing a concrete bridge over Looney's creek at a point where that stream intersects the public highway leading from Buchanan to Roanoke. During the progress of this construction, travelers using the highway had to make a short detour, and ford the stream on the south side of the highway. John H. McClelland, driving

at night in a Ford roadster from Roanoke to Buchanan, ran into an excavation on the south side of the southern abutment of the bridge, and sustained injuries to his person and to his machine. To recover damages for these injuries he brought this action against G. P. Coleman and the other individual members of the State Highway Commission, and E. R. Cocke, engineer, and R. B. Whitten, superintendent, the latter two being in charge of the construction. Before the cause came to trial, the plaintiff dismissed his declaration as to all of the defendants except Cocke and Whitten, and as to them he obtained a verdict for the sum of twelve hundred dollars. The trial court set aside this verdict as to Cocke, and entered a final judgment for him, but refused to take similar action for Whitten, and awarded judgment against him for the amount of the damages as fixed by the jury. Whitten thereupon obtained this writ of error.

[1, 2] 1. The original process was issued on February 26, 1921; was returnable on the third Monday in March, 1921, and was returned executed as to some of the defendants on the last named date. The clerk's rule book contained this entry: "2nd March rules, 1921. Dec. filed, process ret'd ext'd on E. R. Cocke, G. P. Coleman, Henry P. Beck, Frank W. Davie, Wade H. Massie, & C. O. as to them. Alias sums vs. R. B. Whitten to 1st April." Later entries in the same book showed that process was subsequently returned executed on Whitten, and that the common order was entered at rules as to him.

When the case was called for trial at the June term, 1921 (the next term after the above entries were made), the defendants offered to prove by the clerk, and also by the attorneys on both sides of the case, that the entry showing the declaration filed as of the second March

rules was incorrect, and that the same was not in fact filed until after more than one month had elapsed from the date on which process had been returned executed as to one or more of the defendants. The evidence thus offered was intended to pave the way for a motion, under sections 6079 and 6140 of the Code, first to correct the alleged mistake in the entry, and then to dismiss the suit for failure of the plaintiff to file the declaration in time.

The court "refused to permit the defendants to produce the evidence aforesaid to contradict the record made by the said clerk in said rule book," and this ruling is assigned as error.

There is no contention that the declaration was not filed within thirty days after process was returned executed as to the defendant, Whitten. The contrary appears to be conceded. There was no judgment against any of the defendants except Whitten, and as to him it does not appear that failure to file the declaration at an earlier day was or could have been prejudicial. Section 6079 of the Code provides that "if one month elapse after the process is returned executed as to any one or more of the defendants without the declaration or bill being filed, the clerk shall enter the suit dismissed although none of the defendants have appeared." We are inclined to the view that this section merely intends to direct the clerk to dismiss the suit as to the defendants against whom process has been returned executed for more than thirty days prior to the filing of the declaration on bill. Such an interpretation seems to meet the mischief which the statute was intended to cure. But we need not decide this question in the instant case, because if it be conceded that the clerk and the court below were both in error in this respect, the error is not one for which we would reverse the judgment, because

it would fall within the intendment of section 6331 of the Code, which provides, in substance, that no judgment or decree shall be reversed for any error committed at the trial which did not affect the substantial rights of the parties.

2. There was a demurrer to the declaration which the court overruled, and this is assigned as error. The reasons for the demurrer were stated in writing in the lower court, but the assignment here is not accompanied by any discussion or even any mention of the grounds upon which it is based. We do not understand that this alleged error is seriously relied upon, and in any event we deem it unnecessary to say more than that the defendants were not prejudiced by the action of the court in overruling the demurrer.

[3–5] 3. We shall consider together the several assignments relating to the instructions and the refusal of the court to set aside the verdict as contrary to the evidence, as they involve one and the same question. There were a number of instructions given over the objection of the defendants, and a number of others requested by them were refused; but the only point specified against the action of the court in these particulars is stated thus in the petition: "The chief objection to, and error in, the instructions is that they submitted to the determination of the jury the question whether the plaintiff was guilty of 'contributory negligence.'" Except as to this ground, the assignments of error relating to the instructions are plainly insufficient. *Puckett* v. *Commonwealth*, 134 Va. 574, 578, 113 S. E. 853, and cases cited. So, too, the only ground on which we are asked to interfere with the verdict as contrary to the evidence, is that the plaintiff's contributory negligence was established by undisputed facts, and was therefore a question for the court and not for the jury.

We are unable to sustain this contention, and are of opinion, without expressing any view as to the weight of the evidence, that the question whether the plaintiff negligently contributed to the accident was properly left to the jury. There was evidence tending to show that the plaintiff was not very familiar with the course of the road or the relative location of the bridge under construction. He had gone to Roanoke in the forenoon of the day of the accident, passing the bridge and making the detour in the opposite direction, but his car was then being driven by a young man who accompanied him, and he claims to have paid very little attention to the situation. He came back later than he had anticipated, and it was dark and raining when he ran into the excavation. He testified that there was no barricade, light or other adequate warning at or near the point of detour, and that he did not discover the danger until too late to avoid the accident. There was, to be sure, evidence upon which the jury might have inferred that he was driving heedlessly and at excessive speed, and that lumber and sand piled on the roadside ought to have warned him, but his testimony is to the contrary. He knew there was an open bridge on the road and that he would have to pass it, but he "expected to be something if it was a dangerous place, to block the road or indicate it," and he had the right to assume that it would not be left at night without some reasonably adequate provision for warning travelers of its approximate location. It was held in *Marshall* v. *Valley R. R. Co.*, 99 Va. 798, 34 S. E. 455, and *Watts* v. *Southern Bell Tel. Co.*, 100 Va. 45, 40 S. E. 107, that travelers using a highway at night have a right to presume that it is in a reasonably safe condition.

[6] 4. It is said that the court erred in refusing to set aside the verdict of the jury on the ground that the

amount of damages awarded was excessive.    The injury to the plaintiff's car was repaired for $96, but we have no other measure than the verdict of the jury by which to estimate the injuries to his person.    They were painful and serious, including the loss of two teeth and the fracture of a jawbone.    The verdict in this case is not so large as to enable us to say that the jury was actuated by partiality or prejudice, and therefore we cannot set it aside as excessive.    *Southern Ry. Co.* v. *Clarke*, 106 Va. 496, 56 S. E. 274; *Southern Ry. Co.* v. *Smith*, 107 Va. 553, 560, 59 S. E. 372; *McCrorey* v. *Thomas*, 109 Va. 373, 381, 63 S. E. 1011, 17 Ann. Cas. 373.

5. The remaining assignment presents more difficulty than any of the others, and, upon a most careful consideration, we feel constrained to hold that it must be sustained.

The primary question in the case was whether the defendant, Whitten, had used ordinary care to provide reasonably adequate warnings for the protection of persons using the highway at the point of the accident. He had testified that piles of lumber and sand had been placed along the side of the highway at and near the point of detour in such a way as to constitute a customary and sufficient warning to travelers.    On cross-examination, counsel for the plaintiff elicited from him the admission that in a few days after the accident he had placed a barricade across the road on the south side of the excavation.    It is difficult to state in a brief narrative form, with the essential setting and incidents, just what transpired in this connection, and we therefore quote from the bill of exceptions as follows:

"By Mr. Haden.

"Q. Now, Mr. Whitten, you say that what you did there, that is the so-called obstruction that you had on the south side, that is, on the Roanoke side, were usual and customary under those conditions. `

"A. Yes, sir.

"Q. That is, the obstructions you had there imme--diately preceding the accident were usual and customary.. After this accident was over, the same conditions pre--vailed there as had prevailed before the accident, so far as the danger to the traveling public was concerned, it was identically the same the next day and the next week as it was when McClelland was hit?

"A. Not altogether.

"Q. What was different?

"A. This 4,000 feet of lumber that I told you I had. ·in there, some of it was moved out.

"Q. How much of it?

"A. I can't say how much was moved the next day after the accident, but some was moved out that day and used, and carried to the far side, the north side, the Buchanan side, for the construction of the abutment on. that side.

"Q. You didn't take all of that 4,000 feet over there,. did you?

"A. No, sir.

"Q. How much did you leave on the other side for the next week, approximately?

"A. Oh, I would say 2,000 or 2,500, I guess.

"Q. That was about as effectual as the 4,000, wasn't it, so far as warning a man on the road?

"A. In a way it was, and in a way it wasn't, because I may have thrown some back in order to get what I wanted out.

"Q. It may have been burned up. I am asking you: what did happen, not about 'may.' Wasn't the lumber that was actually left there for the week following this accident just about as efficacious for warning travelers as the lumber that was there on the night Mr. McClel--land was injured?

"Mr. Robertson: The defense objects to any line of questioning that would attempt to show what barricades were put up, or precautions taken after the injury occurred.

"Mr. Haden: I will ask that question over again.

"Q. In other words, wasn't the lumber that was there for two or three days after this accident happened, on the south side, just as sufficient or just about as sufficient, a warning to a traveler using the road from the direction of Roanoke to Buchanan as was the lumber that you claim was there on the night of the accident?

"A. After the accident there was extra precaution used.

"Q. Yes, sir; I thought so. Then after the accident was over, you concluded that what you now claim was customary and sufficient, was not sufficient, didn't you?

"A. No; I moved part of that lumber to the other side, and I didn't have as much in the road left there, because it had been moved around.

"Q. But you built a barricade on the side towards Roanoke, before you moved any to the other side, didn't you, after this accident?

"A. No, sir.

"Q. Didn't you shortly after this accident, within a day or two after this accident, establish a barricade on this road, on the Roanoke side, just short of that culvert?

"A. Yes; I put another barricade in after we moved some of that lumber out.

"Q. And the barricade that you put up across the road, and not on the side of the road like you left the lumber the night of the accident?

"A. Yes, sir; that was across the road, because we moved some of the lumber out of the road.

"Q. You didn't have the lumber packed across the road the night of the accident?

"A. There was no lumber crossways of the road, it was lying lengthways of the road.

"Q. But I am talking about the barricade you all put up within two or three days after this accident, went diagonally across the road.

"Mr. Robertson (attorney for the defendants): Counsel for the defendants object to all this line of questioning.

"The Court: The witness testified that the lumber and material were such as were customarily used for the purpose of a barricade. Now, if under the same conditions be added other barricades it would have a tendency to show that he was mistaken about the usual custom of relying upon material, and upon that ground the evidence is admissible. It ordinarily is not admissible to show changes after an accident has happened.

"A. Yes, sir; the barricades I put up afterwards went diagonally across the road.

"Q. In other words, the barricade that you put up two or three days after this accident on the south side towards Roanoke, completely blocked the main road as a man would approach this culvert from Roanoke?

"A. Yes, sir."

"Whereupon the defendants, by their attorneys, moved the court to exclude the said evidence, so offered to be given, and so given, by the plaintiff, from going to the jury for that the same was not admissible in law upon the issue joined, which motion the court overruled and permitted and allowed the said evidence to go to and to be received by the jury, and then and there stated, in the presence and hearing of the jury, that 'the witness testified that the lumber and material were such as were customarily used for the purpose of a barricade. Now, if under the same conditions he added other barricades it would have a tendency to show that he was

mistaken about the usual custom of relying upon material, and upon that ground the evidence is admissible,' to which opinion and action of the court in overruling the said motion and permitting and allowing the said evidence to go to and to be received by the jury, and making the statement with reference thereto aforesaid, in the presence and hearing of the jury, the defendants, by their attorneys, except," etc.

[7, 8] We think the evidence in question ought to have been excluded. It is settled law in this State, and the weight of authority is to the same effect, that evidence of precautions taken after the happening of an accident is not admissible to prove antecedent negligence. *Va. & N. C. Wheel Co.* v. *Chalkley,* 98 Va. 62, 64, 34 S. E. 976; *Bowles* v. *Va. Soapstone Co.,* 115 Va. 690, 694, 80 S. E. 799, and authorities cited.

[9, 10] The error in allowing the evidence was not overcome by the limitation fixed by the learned trial judge upon the purpose for which it was admitted. This is true for several reasons. The cross-examination stressed the subsequent precaution, requiring the witness to repeat the fact a number of times, and, if the ground stated for the admission of the evidence had been good, the mere statement by the court to counsel of the reason for the ruling, without expressly telling the jury that they could not consider it as tending to prove antecedent negligence, would hardly have been a sufficient safeguard against prejudice to the defendant. Again, the witness had explained that the barricade had been erected because some of the lumber which was piled on the south side of the bridge when the accident occurred had been subsequently removed, and the language used by the court in admitting the evidence had a tendency, unintended by the court of course, to discredit that explanation. And, finally, we do not think

the evidence was admissible even on the ground indicated by the court. It did not seem to be offered for the purpose of disproving the general custom as testified to by the witness, but its apparent purpose was to prove a subsequent fact at variance with the general custom which tended to show that such a custom was negligent.

Counsel for the plaintiff have suggested several answers to the assignment of error under consideration, and these will now be taken up in their order.

(a) It is insisted that counsel for the defendant brought out, on cross-examination of the plaintiff, the same evidence to which they afterwards objected when the defendant was being cross-examined, and are therefore estopped from relying upon the point made under this assignment. The position here taken is based upon the following extracts from the cross-examination of the plaintiff, John H. McClelland:

"Q. Then so far as this case is concerned, if we had erected a concrete barricade at the point where the detour turned off, instead of your falling into the excavation you would have smashed into the barricade.

"A. Well, I would have seen the barricade across the road, because afterwards, if you will allow me to state it, I came to the point and I saw they had big logs across and had up a big light.

"Q. Would you expect us to put more barricade across the road than a concrete culvert four feet high?

"A. If the concrete was not visible until you were right on it I would have thought so. I saw this barricade put back right at the detour when I came back there several weeks later, I found this barricade put there.

"Q. Wait just a minute; I am not asking about that.

"A. You asked me what more I would have expected, and I want to answer it."

There was no exception noted to the foregoing statements with reference to the subsequently erected warnings, counsel for the defendants contenting himself by the mere admonition to the witness that his answers were not responsive to the purpose of the questions addressed to him.

[11] It is a well settled and obviously sound general rule that an objection to evidence cannot be availed of by a party who has, at some other time during the trial, voluntarily elicited the same evidence, or has permitted it to be brought out by his adversary without objection. The rule finds its most frequent application in cases where the party making the objection *afterwards* introduces the same evidence, but it is properly and logically applicable in any case, regardless of the order of introduction, if the party who has brought out the evidence in question, or who has permitted it to be brought out, can be fairly held responsible for its presence in the case.

[12] We do not think that the rule applies here. The defendant was not asking the plaintiff about subsequent precautions, in the cross-examination last above quoted, and expressly said so at the time. Later on, when the fact that subsequent precautions had been taken was apparently about to become an issue in the case, the defendant not only objected, but moved the court, after the objection had been twice ineffectually made, to strike the evidence out. This motion, it is true, did not in terms apply to the statements on the same subject which the plaintiff had volunteered when he was being cross-examined, but at the time the motion was made both the parties and the court fully understood that the defendant was earnestly objecting to any evidence tending to show subsequent precautions. If the motion had expressly embraced the statements made by the plaintiff, the court's ruling would not have been

different, and, under the circumstances, the failure of the defendant to make a more formal objection to such statements at the time the plaintiff made them cannot be fairly held to have operated a waiver by the defendant of the point saved in the bill of exceptions as above quoted in full. As we said in *Washington-Va. Ry. Co.* v. *Deahl*, 126 Va. 141, 151, 100 S. E. 840, 844, "the general rule here invoked is well settled, but in order to be applicable there must be some reasonable and just foundation for holding that there was in fact a waiver. An application of the rule in this case would be a distortion of its purpose, and a sacrifice of the principle upon which it rests."

[13] (b) It is said that the plaintiff did not intend to elicit any evidence of subsequent precautions, but that the same merely came out incidentally as a part of the examination of the witness with respect to the conditions existing at the time of the accident, and the usual custom of road builders under such circumstances. As to this contention, we deem it sufficient to say that the evidence, as thus developed, regardless of the purpose of counsel, was calculated to prejudice the defendant. The court and opposing counsel thought that the plaintiff was intentionally proving that such subsequent precautions were taken, and the jury in all probability would have thought the same thing. At any rate, the evidence was in, and it ought to have been excluded.

(c) It is claimed that the "ruling of the court clearly told the jury what the evidence could be used for, and that it was not admissible to show changes after the accident happened." We have already indicated that our view is contrary to this contention, and we will only add here that the court did not directly address any instruction to the jury on this subject, and, far from telling them that evidence could not be allowed "to

show changes after the accident happened," expressly admitted evidence of that very fact.

[14] (d) The final position taken by the plaintiff in defense of the action of the court in admitting the evidence in question is that the defendant did not except thereto in due time and manner.    We have heretofore disposed of this point in so far as it relates to the failure of the defendant to object to the statements on the subject volunteered by the plaintiff during his cross-examination.    As to the evidence brought out by the plaintiff on Whitten's cross-examination, the bill of exceptions shows that objection was made as soon as the dangerous drift of the examination became apparent, was repeated when counsel for plaintiff seemed to be emphasizing the fact that subsequent barricades were erected, and was finally again repeated in the form of a motion to exclude.    The latter alone would have been sufficient and timely, even if no previous objections had been made.

[15] For the error in admitting the evidence of subsequent precautions, the judgment must be reversed and the cause remanded for a new trial to be had not in conflict with the views herein expressed.    The question of the amount of damage, however, is not to be tried again. Upon this point the case was fully developed, the parties had a fair trial, and if upon another trial the verdict should be for the plaintiff on the merits of the case, the court shall enter a judgment thereon in favor of the plaintiff for the sum of $1,200.    This direction is made pursuant to section 6365 of the Code.    See also *Hines* v. *Garrett*, 131 Va. 125, 141, 108 S. E. 690.

*Reversed and remanded.*